COMMONWEALTH *vs.* JOSE SANCHEZ.

No. 95-P-216.

Worcester. January 23, 1996. - May 8, 1996.

Present: DREBEN, KAPLAN, & LAURENCE, JJ.

*Constitutional Law,* Search and seizure. *Search and Seizure,* Automobile, Impoundment of vehicle. *Practice, Criminal,* Required finding. *Controlled Substances. Joint Enterprise. Evidence,* Joint enterprise.

In the circumstances of a lawful stop of an automobile on a highway, police officers properly impounded the vehicle for reasons of safety and security where the owner of the car was not ascertainable and the only licensed operator not under arrest disclaimed any interest in the vehicle. [414-415]

In a criminal case in which the evidence was sufficient to establish the defendant's constructive possession of a quantity of cocaine with intent to distribute [415-418] but not sufficient to prove beyond a reasonable doubt possession on a theory of joint venture [418-419], the defendant was entitled to a new trial where the verdict did not specify on which theory the jury convicted [419].

INDICTMENT found and returned in the Superior Court Department on February 16, 1994.

Pretrial motions to suppress evidence were heard by *Regina L. Quinlan,* J., and the case was tried before *James P. Donohue,* J.

*Peter M. Onek,* Committee for Public Counsel Services, for the defendant.

*Kennera M. McSherry,* Assistant District Attorney, for the Commonwealth.

KAPLAN, J. In summary: Following the stop of a car on the highway, the car was impounded, and inventory searches disclosed some 14.6 grams of cocaine in a jacket hung over the driver's seat and a larger quantity in a suitcase in the trunk. The defendant, one of the passengers, was indicted for

trafficking in the larger amount.[1] On motion to suppress, the defendant argued that the impoundment was unjustified, thereby invalidating the inventory searches. The motion was denied. At trial, the defendant, on his motion for a required finding of not guilty, contended that there was insufficient evidence that he was guilty of the offense by reason of his constructive possession of the cocaine with intent to distribute, or, alternatively, as a joint venturer with the driver in such possession. The motion was denied, the jury brought in a guilty verdict, and the defendant appeals from the judgment. We hold that the car was impounded lawfully. The Commonwealth established the constructive possession, but failed on the alternative joint venture theory. As the jury may have convicted solely on the latter basis, the judgment will be reversed for a new trial.

In detail: At 9:30 P.M., October 19, 1993, State trooper Timothy G. Babbin, on routine patrol with a partner in a marked cruiser, was traveling eastward on Interstate 84 in Sturbridge near the Connecticut border, a wooded area. He observed ahead of him a Nissan automobile (two door; 1987 model) with a New York license plate. As the car showed no rear lights — a violation of law, cf. *Commonwealth* v. *Valentine*, 18 Mass. App. Ct. 965, 966 (1984) — Babbin decided to stop it and check. The car pulled over in response to the cruiser's activation of blue lights. Approaching, Babbin asked the driver, Hector Cruz,[2] for his driver's license and the car registration. Cruz showed a Massachusetts registry identification card and New York registration and insurance identification cards, the latter two with the name "Roland Davie" and an address at 636 West 136th Street, New York City.[3] Cruz did not produce a driver's license. A quick computer search revealed that warrants were outstanding against Cruz for operating a motor vehicle after license suspension and for assault and battery and disturbing the peace. Babbin arrested Cruz and placed him in the cruiser.

---

[1] The defendant was indicted for trafficking in more than 200 grams of cocaine, G. L. c. 94C, § 32E(b)(4). He was also indicted for possession of cocaine with intent to distribute but that charge was finally dismissed as duplicative. See also note 10, *infra*.

[2] Cruz was indicted as a codefendant but was tried separately.

[3] Babbin on November 1, 1993, mailed a certified letter to this name and address. There was no response.

Elizabeth Mendez was in the front passenger seat; in the back seat behind the driver sat the defendant Jose Sanchez; Rafael Mateo sat at his side. Mendez produced a valid Massachusetts driver's license; she indicated that she was an accommodation passenger being driven to Lynn. Sanchez and Mateo had no identification. Responding to Babbin's question, who owned the car, Cruz, Mendez, and Mateo said it was "a friend from New York," but they did not supply a name. As Sanchez did not speak English, Babbin did not question him. Babbin checked with his dispatcher and was told that there were no warrants outstanding for any of the passengers, nor had the car been reported as stolen.

Returning to the car, Babbin asked the passengers to step outside and said he intended to have the car towed. Babbin had already observed that the car's trunk lock was missing, leaving a hole, and the latches on the car's rear windows were broken, so the windows could not be secured. The two doors, including windows proper, were undamaged. A key was in the ignition.

With the car impounded, awaiting the tow, and a third officer arrived on the scene, Babbin commenced an inventory search according to the written procedure of the State police (cited below). In the right hand pocket of a jacket draped over the driver's seat, Babbin felt a heavy weight. This turned out to consist of a bottle of perfume and a sock wrapped around a glassine bag which contained white rock and powder later testing as 14.6 grams of 80% pure cocaine. Cruz acknowledged that he owned the jacket, but he and the others denied owning the cocaine. Babbin placed Sanchez and Mateo under arrest.[4]

The inventory search continued after the towed car reached a police barracks in Sturbridge; Babbin searched the trunk, his partner, trooper Donna Lasarda, the interior. Opening the trunk, Babbin found a large suitcase and two small travel bags. The suitcase held articles of clothing (see below) and a bag with 242.8 grams of white rock and powder 46% pure cocaine.[5] Under the travel bags, also containing clothes, were two papers, one of these a birth certificate of Sanchez.

The glove compartment yielded a bill, addressed to Sanchez

[4]Babbin said Mendez would be complained of. She was pregnant.

[5]There was expert testimony at trial that this quantity betokened "trafficking" rather than possession for personal use.

at 510 West 144th Street, New York City, for a beeper with a number (212)389-9254. A beeper was on Sanchez's person when he was searched. An address book belonging to Cruz was lodged between the driver's seat and a side of the console separating the front seats. Among the business cards in the address book was one with the number mentioned. A rear car window bore a "For Sale" sign with the same number. When Babbin dialed it, Sanchez's beeper responded.

The foregoing was the substance of the evidence presented on the motion to suppress, which was denied (and denied also when formally repeated at trial). It was likewise the nub although not the precise substance of the evidence presented at trial, whose sufficiency to support a conviction for trafficking was attacked by motion for a required finding of not guilty, which also was denied.

1. If the impoundment was illegal, then so were the consequent searches, and the prosecution would fail. See *Commonwealth* v. *Garcia*, 409 Mass. 675, 678 (1991); *Commonwealth* v. *Dunn*, 34 Mass. App. Ct. 702, 703 (1993). The Commonwealth suggests that the condition of the car — missing rear lights, lockless trunk, broken latches — provided a basis for an inference that the car was stolen. So, too, the Commonwealth relies on the fact that the three who were questioned did not provide the name or a clue to the name of the owner of the car now hapless on the highway. The natural and understandable expedient, says the Commonwealth, was to impound the car.

The defendant points out that the car had not been reported stolen, and the faults in the car did not translate into significant proof of a theft,[6] for some familiar telltale signs of car theft did not appear, and a key was in the ignition. True, the name of the owner was not forthcoming, but why was not the defendant Sanchez questioned on the subject, using Mateo, perhaps, as translator? The Commonwealth could agree that the officer might have been more thorough, but the defendant's ostensible relation to the car as a go-between in its possible sale, which might make his answer to the ownership question particularly interesting, was not evident until the later inventory search. One can only speculate what the defendant's answer might have been, and the problem of the custody of

---

[6]Compare: "That a car is a junk heap is not of itself a sufficient reason for a stop." *Commonwealth* v. *Kimball*, 37 Mass. App. Ct. 604, 604 (1994).

the vehicle would need a prompt answer even if the defendant offered a name. The defendant contends that the officer was under a duty to try to arrange to have the car cared for short of impoundment, and suggests that Mendez, with her license, might have been deputed to drive the car off (destination perhaps Lynn). The defendant claims to find such a duty of improvisation in General Order TRF-10 (1992) of the State police governing "Motor Vehicle Inventory," but we do not agree.[7] At all events, the proposed means of circumventing impoundment seems quite implausible: approval by the owner was out of reach because the owner was not identified, and Mendez was disclaiming any interest in the entire affair, picturing herself as merely there for the ride. Considering the reasons of security and safety that justify the impoundment of vehicles, see *Commonwealth* v. *Garcia*, 409 Mass. at 678-679 & n.3; *Commonwealth* v. *Dunn*, 34 Mass. App. Ct. at 703, as well as the proposition that an officer's judgment in the matter is to be tested by what reasonably appeared to him at the time, rather than to us in long afterthought, we conclude, in agreement with the finding of the motion judge, that the impoundment was lawful.

2. Upon the evidence received at trial, the Commonwealth pressed its first theory of guilt, namely, that the defendant had constructive possession of the 242.8 grams of cocaine. Constructive possession implies "knowledge coupled with the ability and intention to exercise dominion and control" over the contraband. *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 409 (1989), quoting ultimately from *Commonwealth* v. *Deagle*, 10 Mass. App. Ct. 563, 567 (1980). The jury could properly find that the defendant Sanchez had such possession.

The defendant was present and traveling in a vehicle carrying the cocaine. While that alone would not suffice to establish the required possession, "[p]resence in the same vehicle supplemented by other incriminatory evidence . . . may suf-

[7]The General Order deals with how impounded vehicles are to be inventoried; it is not intended to describe the situations in which vehicles should or should not be impounded. The point is made in *Commonwealth* v. *Caceres*, 413 Mass. 749, 750-751 (1992). Section 4.1.4 of the General Order, cited by the defendant, does not help him. The facts of this case do not invite discussion of the possibility of a duty of the police under article 14 of our Declaration of Rights to seek to avoid impoundment where feasible. Compare *Commonwealth* v. *Caceres*, 413 Mass. at 751; *Commonwealth* v. *Alvarado*, 420 Mass. 542, 552 (1995).

fice to show knowledge or intent to control." *Commonwealth*
v. *Garcia*, 409 Mass. at 687. The other incriminating evidence
in the present case is four-fold.

The defendant exercised a large measure of control over
the car itself. Thus we have the "For Sale" sign displaying
the defendant's beeper number which sounded the beeper on
the defendant's person; to which we need add the beeper bill
addressed to the defendant located in the glove compartment,
and the defendant's personal papers in the trunk. The
defendant's control over the car supports an inference that he
was acquainted with its contents. See *Commonwealth* v.
*Araujo*, 38 Mass. App. Ct. 960, 962 (1995), analyzing *Com-
monwealth* v. *Almeida*, 381 Mass. 420, 422 (1980), and *Com-
monwealth* v. *Brown*, 401 Mass. 745, 748 (1988), and
emphasizing the importance of ownership of the vehicle as a
basis for inferring knowledge of what the vehicle is carrying.
See to the same effect *Commonwealth* v. *Boone*, 356 Mass. 85,
87-88 (1969). In the present case we cannot impute owner-
ship of the car to the defendant, but his evident control will
do as well.

The clothing in the suitcase brings the defendant closer to
the stash itself. Much of the clothing was small man's, includ-
ing pants with waist sizes of twenty-nine and thirty-one inches
and shoes sized seven and seven and one-half. The jury could
observe the defendant's small build. See *Commonwealth* v.
*James*, 30 Mass. App. Ct. 490, 495 (1991).[8] The items likely
belonged neither to Mendez nor to the other men: Cruz was
estimated at five feet, five inches, one hundred seventy to
seventy-five pounds; Mateo, five feet, eight inches, two
hundred pounds. The jury could make a probable inference
that the defendant possessed the small items, even though the
suitcase also contained items of larger dimensions. Compare
*Commonwealth* v. *Xiarhos*, 2 Mass. App. Ct. 225, 231-232
(1974); *Commonwealth* v. *Lee*, 2 Mass. App. Ct. 700, 703-704
(1974) (clothing identified only as "male" provided basis for
inference that nearby drugs belonged to this male defendant).

The defendant's birth certificate and another personal paper
were found in the trunk near the suitcase with the cocaine.
This invites analogy to *Commonwealth* v. *Pratt*, 407 Mass.
647, 650, 652 (1990), where the court said: "When contraband

---

[8]The prosecutor's opening statement estimated the defendant's weight as
one-hundred twenty pounds.

is found in a dwelling shared by a defendant and one or more other persons, a finder of fact may properly infer that the defendant is in possession of the contraband . . . from evidence that the contraband was found in proximity to personal effects of the defendant in areas of the dwelling, such as a bedroom or a closet, to which other evidence indicates the defendant has a particular relationship" (personal papers found in the same room with drugs). The quoted words were taken from *Commonwealth* v. *Rarick*, 23 Mass. App. Ct. 912, 912 (1986) (personal papers in same dresser as drugs). See also the *Xiarhos* and *Lee* cases, *supra,* and *Commonwealth* v. *Gill*, 2 Mass. App. Ct. 653, 656-657 (1974) (all infer possession of drugs from personal papers less proximate than in present case). The analogy between rooms in an apartment and space in a car trunk may not be exact, yet the presence of personal papers in the latter setting does point to a defendant's familiarity and knowledge of contents.

The defendant carried on his person a message beeper, "an item associated with the sale of controlled substances." *Commonwealth* v. *Clermy*, 421 Mass. 325, 330 (1995). Legitimate uses of a beeper are of course common, but an "item . . . not primarily designed for drug use may take on characteristics of drug paraphernalia by virtue of particular circumstances." *Commonwealth* v. *Cermenatty*, 37 Mass. App. Ct. 908, 910 (1994), citing *Posters 'N' Things, Ltd.* v. *United States*, 114 S. Ct. 1747, 1752 n.11, 1754 (1994). Here the beeper was related to the sale of the car, but that need not have exhausted its meaning. With the stash found, the proposition gains weight that this beeper was associated with the distribution of the drug.

The defendant cites *Commonwealth* v. *Manzanillo*, 37 Mass. App. Ct. 24 (1994). There a driver-owner of a passenger van was held not to have had knowledge (and hence did not have constructive possession) of drugs contained in a closed hip pouch located behind the driver's seat. The situation in *Manzanillo* was quite different from the present. Apart from Manzanillo's presence and ownership of the van, there were no further incriminating factors tying him to the drugs. (A statement by him that might have provided an added link was ruled out.) The fact that the van was hired for passenger transportation reduced the likelihood that the driver would know the contents of baggage that was being carried.

Under *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting from *Jackson* v. *Virginia*, 443 U.S. 307, 319 (1979), the standard that we employ in reviewing the denial of a motion for a required finding of not guilty is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original). Although the question is not open-and-shut, we conclude that the jury could have found the constructive possession beyond a reasonable doubt.

3. In asking and obtaining an instruction regarding possible joint venture responsibility of the defendant, the prosecution was postulating that if proof of constructive possession by the defendant failed, he might still be held on the accessorial basis.

This could come about, first, by casting Cruz as the principal in trafficking in the cocaine in the suitcase, with the defendant aiding, or holding himself available to aid Cruz in the enterprise, while sharing with Cruz the frame of mind intrinsic to the crime. See *Commonwealth* v. *Richards*, 363 Mass. 299, 307-308 (1973); *Commonwealth* v. *Soares*, 377 Mass. 461, 470, cert. denied, 444 U.S. 881 (1979). There was a dearth of evidence in the present case that could fairly represent Cruz and the defendant in the respective roles of principal and aider or accessory. Cruz was the driver present in the car, seemingly possessing personally a separate amount of cocaine of separate caliber,[9] and knew the defendant's beeper number. Even if sufficient evidence could be introduced to find Cruz guilty of trafficking in the cocaine in question here, there would be much difficulty in seeing the defendant as a helper of Cruz in this trafficking.[10]

Second, joint venture is applied to a criminal operation in which the participants act together with a similar mental set toward a common end and where it may be unfeasible, and in

---

[9]The purity percentages were quite different, suggesting no sameness of physical source, and there was no proof of similarity of packaging, brand, or the like. See the discussion in *Commonwealth* v. *James*, 30 Mass. App. Ct. at 495-497 & n.8.

[10]The judge in his instructions (and verdict slips) had offered the jury the choice of finding the defendant guilty of trafficking in fourteen or more grams as a lesser included offense, but the jury responded only to two hundred grams.

any event needless, to decide who was a principal and who a helper — for each is guilty whether acting in one or the other role or successively in both. Common examples are cases of criminal physical assaults by multiple defendants, all held guilty on a joint venture basis. See *Commonwealth* v. *Ferguson*, 365 Mass. 1, 7-10 (1974); *Commonwealth* v. *Williams*, 422 Mass. 111, 121-122 (1996); *Commonwealth* v. *Fidler*, 23 Mass. App. Ct. 506, 512-513 (1987); *Commonwealth* v. *Mercado*, 24 Mass. App. Ct. 391, 396 (1987). In the present case Cruz is simply not shown to have cooperated with the defendant in trafficking cocaine; lacking altogether is any showing of a union of minds. Thus in any view we think the joint venture theory failed of proof.

4. On our analysis, there was not enough evidence to submit to the jury on the theory of joint venture. As the jury may have taken this erroneous route to their guilty verdict, the judgment must be reversed, with new trial available. As illustrative: "In the instant case, the jury verdict did not specify whether the conviction of manslaughter was premised on a theory of individual liability or on joint venture. Because a verdict of guilty of manslaughter was legally unsupportable on a theory of individual liability and we cannot tell whether the jury adopted this theory, we reverse the conviction and set aside the verdict." *Commonwealth* v. *Flynn*, 420 Mass. 810, 818 (1995). See *Commonwealth* v. *Fickett*, 403 Mass. 194, 197 (1988); *Commonwealth* v. *Eldridge*, 28 Mass. App. Ct. 936, 938 (1990); *Commonwealth* v. *Kickery*, 31 Mass. App. Ct. 720, 724 (1991). The point was preserved by the defendant's motion for a required finding of not guilty. See *Commonwealth* v. *Fickett*, 403 Mass. at 197.

*Judgment reversed.*

*Verdict set aside.*