## COMMONWEALTH *vs.* ROMAN LUIS GONZALEZ.

No. 95-P-1558.

Suffolk. September 12, 1996. - February 21, 1997.

Present: JACOBS, GILLERMAN, & IRELAND, JJ.

*Controlled Substances. Practice, Criminal,* Required finding.

Evidence, including circumstantial evidence and proper inferences, at the trial of an indictment for trafficking in cocaine in violation of G. L. c. 94C, § 32E(*b*)(1), as appearing in St. 1983, c. 571, § 3, was sufficient to warrant the jury's finding beyond a reasonable doubt that the defendant had knowledge and constructive possession of cocaine found on a porch concealed in a pile of clothes and trash under a window of the apartment the defendant occupied. [237-241]

INDICTMENT found and returned in the Superior Court Department on July 13, 1987.

The case was tried before *Robert A. Mulligan,* J.

*David M. Skeels,* Committee for Public Counsel Services, for the defendant.

*Nancy L. Hathaway,* Assistant District Attorney, for the Commonwealth.

JACOBS, J. Soon after a Superior Court jury was unable to agree upon a verdict, a second jury convicted the defendant of trafficking in cocaine with a net weight of twenty-eight grams or more, pursuant to G. L. c. 94C, § 32E(*b*)(1), as appearing in St. 1983, c. 571, § 3.[1] The sole issue before us is whether the judge erred in denying the defendant's motion for a required finding of not guilty. We conclude that there was no error and, therefore, affirm the conviction.

We summarize the pertinent evidence, viewing it, as we

---

[1]When the defendant was indicted in July, 1987, statutory trafficking in cocaine required proof of a minimum net weight of twenty-eight grams. In 1988, G. L. c. 94C, § 32E(*b*), was amended by St. 1988, c. 124, reducing the requisite minimum amount to fourteen grams.

must, in the light most favorable to the Commonwealth. See *Commonwealth* v. *Merola*, 405 Mass. 529, 533 (1989). Acting under a warrant, the validity of which is not in question, police officers searched a first-floor apartment (1R) of a building at 41 Hosmer Street in Boston. The building contains two apartments on each of its three floors. Each of the two apartments on a floor shares a common back hallway, the back door of which leads to a common back porch. The back hallways are connected by a common interior back stairway. Each porch, therefore, is accessible from any of the apartments in the building. Exterior stairs connect the first-floor porch and the back yard of the building.

When the officers entered apartment 1R, the only occupants were the defendant and an unidentified woman. A pat-down of the defendant yielded a key to the front door of the apartment. In searching the rear bedroom (there were at least two bedrooms in the apartment), the officers found $1,269 in cash in a bureau drawer, together with personal papers containing the name of the defendant. Among these papers were bills from a paging service, indicating use of a pager approximately three months prior to the search, together with insurance bills and statements and title documents relating to three motor vehicles. These documents, all dated within approximately seven months of the search, listed three different addresses for the defendant other than 41 Hosmer Street. Four photographs of the defendant also were found in the same bureau.

In their search of the kitchen of the apartment, the officers found five one-pound jars of lactose and a small scale, referred to as a gram scale or postal scale. A sixth jar of lactose was found in one of the bedrooms. An officer searching the first-floor back porch found a plastic bag containing more than 155 grams of cocaine concealed in a pile of old clothes and kitchen trash under a window of apartment 1R.

One of the officers who conducted the search, testifying as an expert, see *Commonwealth* v. *Sendele*, 18 Mass. App. Ct. 755, 759 & n.14 (1984), stated that cocaine of the quality found on the porch often would be diluted before being sold at "street level" and that one of the substances commonly used as a diluent, as of the time of the search, was lactose. He also testified that sellers of cocaine frequently change their locations, deal in cash, and use pagers and gram scales similar to the one found in the apartment. He further stated that

sellers sometimes keep cocaine outside their apartments for the purpose of disassociating themselves from it in the event of a police search. There was also evidence that the defendant failed to appear for his originally scheduled trial, the date of which was known to him, resulting in the issuance of a warrant for his arrest. The defendant was returned to court on that warrant approximately five and one-half years later, following which the trial under review was scheduled.

Our inquiry focuses on whether this evidence could satisfy any rational trier of fact that the possession element of G. L. c. 94C, § 32E,[2] had been established beyond a reasonable doubt. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). Absent evidence of actual possession, proof of constructive possession is necessary. *Commonwealth* v. *Caterino*, 31 Mass. App. Ct. 685, 688 (1991). "Constructive possession of a controlled substance requires proof that the defendant had knowledge of the location of the illegal drugs plus the ability and intent to exert dominion and control." *Commonwealth* v. *Owens*, 414 Mass. 595, 607 (1993). The requisite proof of possession "may be established by circumstantial evidence, and the inferences that can be drawn therefrom." *Commonwealth* v. *LaPerle*, 19 Mass. App. Ct. 424, 426 (1985). See *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 409 (1989).

The critical question before us, therefore, is whether a rational jury could find, beyond a reasonable doubt, that the defendant, on the day of the search, was aware of the cocaine concealed on the porch. Once such knowledge is imputed to the defendant, there is little doubt that the jury reasonably could conclude that he had the ability and intent to exercise dominion and control of the drugs. His ability to exercise such control is apparent from his right of access to the adjacent common porch, see *Commonwealth* v. *Montanez*, 410 Mass. 290, 304-306 (1991) (drugs in ceiling in common hallway). His intent to utilize the concealed contraband could be inferred from the evidence of his involvement in cocaine

---

[2]The applicable version of the statute, G. L. c. 94C, § 32E(*b*)(1), as appearing in St. 1983, c. 571, § 3, provided in pertinent part: "Any person who traffics in cocaine . . . by knowingly or intentionally . . . possessing with intent to manufacture, distribute, or dispense . . . a net weight of twenty-eight grams or more of cocaine . . . shall . . . be punished by a term of imprisonment . . . ."

dealing, derived from the following circumstances: The jury could reasonably conclude from the title and insurance documents found in a bureau of a bedroom, along with the apartment key found on the defendant, that the defendant was more likely an occupant of the apartment than a casual visitor. See *Commonwealth v. Handy*, 30 Mass. App. Ct. 776, 780-781 (1991), and cases cited. Occupancy, in turn, accommodates attribution to the defendant of knowledge of the scale and lactose found in the kitchen. *Commonwealth v. Rivera*, 31 Mass. App. Ct. 554, 557 (1991). Weighted with the expert opinion of the officer, that paraphernalia, combined with evidence of pager use and of frequent changes of address, supports an inference of drug dealing, and the substantial amount of cash found not only strengthens that inference, see *Commonwealth v. Caterino*, 31 Mass. App. Ct. at 689, but also invests it with evidence of recency absent in the other proof of drug dealing.

We next examine whether that same circumstantial evidence of recent cocaine dealing by the defendant within apartment 1R supports the inference of his knowledge of the existence of the stash of cocaine under the rear window of that apartment. It is here that we venture close to the margins of the concept of constructive possession where the peril is that the doctrine may be used in narcotics prosecutions as support for preexisting suspicions rather than as an abstraction fostering fair analysis. Here, too, do the "singularities" of the constructive possession cases render "precedent a somewhat imperfect guide," *Commonwealth v. Sendele*, 18 Mass. App. Ct. at 758, occasionally plunging their reader "into a thicket of subjectivity." *United States v. Holland*, 445 F.2d 701, 703 (D.C. Cir. 1971) (Tamm, J., concurring).

Facts similar to those in this case are contained in *Commonwealth v. Montanez*, 410 Mass. at 304-306, in which it was determined that evidence of drugs found in the ceiling in a common hallway outside of the defendant's apartment reasonably supported an inference of possession where there was independent evidence of the defendant's drug dealing (from police surveillance and cash found on the defendant) together with evidence that he attempted to flee on the eve of trial, from which the jury could infer consciousness of guilt. Additionally, paper folds were found in the defendant's apartment which, although not containing cocaine, were similar to

the folds in which some of the cocaine found in the ceiling was packaged. A factor distinguishing *Commonwealth* v. *Montanez* from this case is the absence here of the type of physical nexus such as that provided by the similarity of the paper folds.[3] The court in *Commonwealth* v. *Montanez,* however, did not rely solely upon that physical nexus but also appeared to depend on the other factors pointing to the defendant's complicity in cocaine distribution. It is that type of inculpatory evidence, rather than the precise location of the drugs, that is most significant to a sufficiency analysis in a constructive possession case. "While presence in an area where contraband is found 'alone cannot show the requisite knowledge, power, or intention to exercise control . . . presence, supplemented by other incriminating evidence, "will serve to tip the scale in favor of sufficiency." ' " *Commonwealth* v. *Brzezinski,* 405 Mass. at 409-410, quoting from *Commonwealth* v. *Albano,* 373 Mass. 132, 134 (1977). When such supplemental evidence is absent, our courts generally are reluctant to link a defendant to nearby contraband.[4] When such incriminating evidence exists, however, its reach should not be limited, in the interest of line-drawing, by the walls of the place where the defendant is found. Rather, its limits

---

[3]See *Commonwealth* v. *James,* 30 Mass. App. Ct. 490, 495-496 & n.8 (1991), collecting cases relying on a physical connection between drugs or paraphernalia in a defendant's possession and a stash constructively attributed to that defendant.

[4]See, e.g., *Commonwealth* v. *Handy,* 30 Mass. App. Ct. at 779-782 (defendant's presence on first floor of two-story house did not support inference of possession of cocaine on second floor, absent evidence of defendant's ownership or residential status or other inculpatory evidence); *Commonwealth* v. *Caraballo,* 33 Mass. App. Ct. 616, 618-620 (1992) (defendant found standing next to chair, under concealed drugs in the ceiling of a common hallway close to his apartment, entitled to required finding of not guilty on charge of possession in absence of any evidence connecting drugs or drug activity to his apartment); *Commonwealth* v. *Brown,* 34 Mass. App. Ct. 222, 224-227 (1993) (presence and awareness of drug dealing in apartment insufficient to support inference of ability and intention to exercise control of drugs found in kitchen outside of bedroom in which defendant's personal papers were found; cocaine and a substantial amount of cash were found in another bedroom). See also *Commonwealth* v. *Cruz,* 34 Mass. App. Ct. 619 (1993). Compare *Commonwealth* v. *Rivera,* 31 Mass. App. Ct. at 558 (occupant of large bedroom not chargeable with dominion or control of drugs found in another bedroom in same apartment in absence of evidence connecting defendant to those drugs, notwithstanding evidence of cocaine and drug paraphernalia found in the large bedroom).

should be determined by "experience and common sense." See *Commonwealth* v. *Arias,* 29 Mass. App. Ct. 613, 618 (1990), *S.C.,* 410 Mass. 1005 (1991). The fact that the inference of awareness may be less compelling when drugs are concealed outside, rather than within, the residence of a tainted defendant, does not preclude its being permitted to a fact finder unless the connection to the defendant is forged entirely of suspicion, the product of inference improperly piled upon inference. See *Commonwealth* v. *Armand,* 411 Mass. 167, 170 (1991). Compare *Commonwealth* v. *Mott,* 2 Mass. App. Ct. 47, 53-54 (1974). Here, layered between the inferences of the defendant's criminality and his knowledge of the concealed drugs is evidence of his prolonged failure to appear for trial.[5] Coupled with the peculiar proximity of the drugs under the rear window of apartment 1R, the evidence of nonappearance, constituting evidence of consciousness of guilt, see *Commonwealth* v. *Toney,* 385 Mass. 575, 582-583 (1982), was sufficient to permit the jury to link the defendant to the concealed drugs.

It is, of course, possible that another occupant of the apartment may have hidden the cocaine. "The *Latimore* standard does not require that the Commonwealth entirely eliminate the possibility that someone other than the defendant could have committed the crime." *Commonwealth* v. *Montanez,* 410 Mass. at 306. It is only when the prosecution's evidence, rather than pure speculation, equally supports the competing possibility, that submission to the jury is deemed improper under the oft-quoted principle that, "[w]hen the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by

---

[5]Evidence that the defendant was aware of the scheduled trial date and failed to appear was introduced through an assistant clerk of the Superior Court, who testified from the minutes of the defendant's case and described a document signed by the defendant acknowledging notice of the original trial date. No claim of error in the admission of this evidence is asserted on appeal. This court, in *Commonwealth* v. *Goldoff,* 24 Mass. App. Ct. 458, 466 (1987), indicated *it was not error to leave to the jury the determination* whether the defendant's departure from Massachusetts before his anticipated notification of his next court appearance date "was flight motivated by a consciousness of guilt." In *Commonwealth* v. *Hightower,* 400 Mass. 267, 269 (1987), the Supreme Judicial Court, noting that other courts are split on the question, found it unnecessary to address whether "a defendant's failure to appear for trial on a known assigned date, standing alone, might be evidence of consciousness of guilt."

legitimate proof." *Commonwealth* v. *Fancy,* 349 Mass. 196, 200 (1965).[6] Here, an inference of possible access to the back porch by others, based only on evidence of the configuration of the apartments and porches, does not equal in strength the evidence supporting the inference that the defendant was dealing in drugs and was aware and in control of the cocaine concealed below the window of his apartment. Any doubt of the defendant's guilt, fueled by speculation of access of others to the drugs, was for the jury to ponder; it was not determinative of the motion for a required finding of not guilty.

*Judgment affirmed.*

---

[6]Although the quoted language may have made its first appearance in a civil case, see *Smith* v. *First Natl. Bank in Westfield,* 99 Mass. 605, 612 (1868), it frequently is relied on in appellate decisions in criminal cases. See, e.g., *Commonwealth* v. *Fancy, supra; Commonwealth* v. *Eramo,* 377 Mass. 912, 913 (1979); *Commonwealth* v. *Salemme,* 395 Mass. 594, 601 (1985); *Commonwealth* v. *Caraballo,* 33 Mass. App. Ct. 616, 619 (1992).