COMMONWEALTH *vs.* JUAN ARTEMIO MOVILIS.

No. 97-P-2069.

Hampden. December 4, 1998. - March 31, 1999.

Present: BROWN, PORADA, & GREENBERG, JJ.

*Controlled Substances.*

In a criminal case, the evidence was not sufficient to warrant a conclusion that
the defendant possessed or constructively possessed cocaine hidden in a
secret compartment in the vehicle, not owned by him, that he had been
driving, and the defendant was entitled to required findings of not guilty.
[579-580]

INDICTMENTS found and returned in the Superior Court Depart-
ment on March 28, 1996.

The cases were tried before *William H. Welch,* J.

*Alan Jay Black* for the defendant.

*Marcia B. Julian,* Assistant District Attorney, for the Com-
monwealth.

GREENBERG, J. Juan Artemio Movilis, the defendant, concedes
that when police followed him into Brittany's Café in Westfield,
they saw him standing with Jose Luis Amarsa Alva near a table
on which a minuscule amount of cocaine lay in plain view. The
primary question on appeal is whether there was sufficient
evidence to link him with a larger amount of cocaine which the
police, in a subsequent search, found cached in the vehicle that
he had driven and parked in the café parking lot.[1] The warrant-
less search of the car and the seizure of hidden contraband by

---

[1]The rock cocaine, found in a secret compartment of the vehicle and admit-
ted in evidence, formed the sole basis of both of the defendants' convictions.
In the joint trial, Alva, the codefendant, was found not guilty of a trafficking
charge but convicted of the lesser included offense of possession with intent to
distribute a class B substance, cocaine. Alva has not appealed.

the two Westfield detectives[2] led to the defendant's convictions of possession of cocaine with intent to distribute, G. L. c. 94C, § 32A(*a*),[3] and of possession of cocaine with intent to distribute within 1,000 feet of a school zone, G. L. c. 94C, § 32J.

At trial before a Superior Court jury, the defendant timely moved for a required finding of not guilty at the close of the Commonwealth's case. See Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979). We appraise in the light most favorable to the Commonwealth the evidence introduced up to the time the Commonwealth rested its case, *Commonwealth* v. *Kelley*, 370 Mass. 147, 149-150 & n.1 (1976); *Commonwealth* v. *Sevieri*, 21 Mass. App. Ct. 745, 750 n.9 (1986); see *Commonwealth* v. *Colby*, 23 Mass. App. Ct. 1008, 1010 (1987), and ask whether the evidence, so viewed, was sufficient to warrant a rational trier of fact in concluding beyond a reasonable doubt that the defendant possessed the cocaine with an intent to distribute in violation of §§ 32A(*a*) and 32J. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979).

The Commonwealth presented the following evidence at trial. On January 15, 1996, Detective Alex Baginski received information from a confidential informant that a drug transaction was to take place later that evening at Brittany's Café in Westfield. Baginski was told that two persons, whose physical characteristics were generally described, were about to leave for Springfield to pick up cocaine and would return to the café to make a sale. Baginski was told that the automobile in which they would travel was a two-door Mercury Grand Marquis.

At about 10:00 P.M., as Baginski and his partner, Detective Lawrence Valliere, sat in an unmarked cruiser in the parking lot of Brittany's Café, they observed a Mercury (with two persons inside) that matched the description they had been given pull into the lot. The operator of the automobile, later identified as the defendant, stepped outside and entered the side door of the café with the passenger, later identified as Alva.

After calling for more assistance, the two detectives entered the café. According to the testimony of Valliere and Baginski,

---

[2]The constitutional validity of the search of the vehicle has been argued, but in the view we take of the case only the sufficiency of the evidence need be considered.

[3]The defendant had been indicted for trafficking in cocaine, G. L. c. 94C, § 32E(*b*)(2), but was convicted of the lesser included offense of possession with intent to distribute, G. L. c. 94C, § 32A(*a*).

the former having entered the place first, the defendant was either standing or sitting at a table. In front of him on the table, inside a napkin, was a small foil or cellophane packet that contained a white powdery substance.[4] Valliere seized the item and showed it to Baginski and two other newly arrived officers. State police laboratory reports admitted in evidence at trial showed that the packet contained a minuscule amount of cocaine — about .06 grams, valued at twenty dollars.

Next, one of the back-up officers, Luis Morales, spoke to the defendant in Spanish and asked him "where the narcotics were." If there was a reply, it does not appear in the transcript. Detectives Baginski and Morales obtained the keys to the car from the defendant's overcoat pocket and escorted him outside. An initial search of the interior of the automobile turned up no contraband. As a result of a more intensive search for the drugs, Morales initially found one bag of cocaine (25.30 grams) secreted in a hidden compartment built into the rear-facing portion of the front passenger seat.[5] When the vehicle was later subjected to another search at the police station, a switch was found beneath the driver's seat which electronically opened and closed the hidden compartment.

The police questioned the defendant, who was standing near the car during the time they were conducting the initial search. He said nothing that indicated any knowledge of what would be discovered inside the car. Nor did the police testify that the defendant conducted himself in a suspicious manner or did anything to indicate consciousness of guilt.

A check of the motor vehicle registration by the police showed that the vehicle was registered and insured to Pablo Santiago of 53 Foster Street, Springfield. There was no evidence establishing any connection between the defendant and Santiago.

---

[4]The detectives' descriptions of the drugs found on the table varied. Valliere testified that there was a powdery substance in a plastic wrapper (cellophane or foil) placed on or near a napkin; Baginski testified that there was a powdery substance wrapped in plastic and placed inside a napkin. A third officer, Luis Morales, testified on direct examination that there was a plastic "baggie" contained in the napkin, but on cross-examination testified that he had seen foil. According to the police laboratory report, the items seized from the table contained "one napkin, white chunk" of a "cocaine derivative."

[5]The police officers found two other bags inside the secret compartment behind the passenger seat; one contained 3.37 grams of a cocaine derivative and the other contained a cocaine derivative weighing .90 grams.

The defendant and Alva were placed under arrest. Found on the defendant's person were $232 in cash and an electronic pager, which the evidence showed was not in his name. The police did not determine the owner of the pager.

Although the detectives testified that the cocaine found inside the car had a street value of $1,500, their testimony did not refer to any similarities in either quality or packaging between the cocaine seized from the car and the powdery substance seized from the table inside the café. If the substance seized from the table were part of the stash secreted in the vehicle (which does not appear), it would seem likely that a police laboratory analysis or testimony from the officers would so indicate.[6] To the contrary, Morales testified that even though the police "field tested" the cocaine seized, he did not know whether the sample of cocaine found in the secret compartment was qualitatively similar to the powder found inside the café.

When the government rested, the defendant timely moved for a required finding of not guilty, Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979); the judge denied the motion, relying primarily on the defendant's presence in the vehicle in which "[t]here was a secret compartment built under the back of the seat that he was sitting in."[7,8]

As we review the evidence, the government's proof of the defendant's possession rests upon his operating a motor vehicle, not owned by him, at the location described by the informant, his presence with Alva in the café at a table on which there was

---

[6]Under cross-examination, Morales could not say whether there was any qualitative relationship or similarity between the cocaine found in the car and what was seized from the napkin in the bar. He could only state that Baginski "field tested them" at the police station. Baginski's direct testimony sheds no light on the subject.

[7]The compartment, as already mentioned, was actually in the back of the front passenger seat, not the driver's seat; the switch that opened the hidden compartment was underneath the driver's seat.

[8]At the close of all the evidence, the defendant renewed his motion for a required finding. At first, the judge seemed inclined to allow it, asking, "Where is the evidence that they had any kind of possession, actual or constructive possession of this?" After a lengthy colloquy with the prosecutor and defense counsel, he denied the renewed motion. He allowed the defendant leave to file the motion again pursuant to Mass.R.Crim.P. 25(b)(2), 378 Mass. 896 (1979). After the jury returned its verdict, the judge indicated he would take up the motion after sentencing, so that defense counsel could file a written motion with supporting briefs. Such a motion was filed; apparently no action has been taken on it.

a small amount of cocaine, and his possession of the keys to the vehicle in which the stash was found concealed in a secret compartment. These proofs, presented to show the defendant's knowledge of the hidden cocaine, are not as strong as the evidence that appears in *Commonwealth* v. *Sanchez*, 40 Mass. App. Ct. 411 (1996), a case on which the government principally relies. There, the police seized narcotics contained in a suitcase in the trunk of a car in which the defendant was a passenger. The government's evidence showing that the defendant had constructive possession of the drugs was described as "four-fold" (*id.* at 416): personal papers belonging to the defendant (his birth certificate, found in the trunk) and a bill for a beeper addressed to the defendant, found in the glove compartment; a "for sale" sign displayed on the vehicle in which the drugs were found listing the defendant's telephone beeper number; clothing of a size that likely fit the defendant (the driver and other male passengers were of much larger build) found inside the suitcase where the drugs were located; and the beeper carried by the defendant. Thus, the evidentiary support in *Sanchez* for constructive possession was much stronger than the evidence in the instant case. For another case in which the evidence warranted a finding of knowledge of contraband on the part of the vehicle's operator, see *Commonwealth* v. *Collins*, 11 Mass. App. Ct. 583, 585-586 (1981) (inference that defendant had knowledge and control over firearms found in trunk of automobile warranted where vehicle was owned and operated by defendant, defendant possessed ammunition fitting two of the guns, and in light of statements made by defendant). Compare *Commonwealth* v. *Brown*, 401 Mass. 745, 747 (1988) (evidence insufficient to show driver of car had knowledge of two handguns found under passenger seat occupied by another person).

   This case resembles in most material respects *Commonwealth* v. *Garcia*, 409 Mass. 675, 686-687 (1991). There, police seized cocaine hidden in the wheel well of the locked trunk of a car driven by the defendant Garcia, but not registered to him. Garcia did not produce a driver's license when requested by the police. He did not, however, say anything to the police indicating any knowledge that there were drugs hidden in the trunk. A passenger in the car (a codefendant in the case) in a post-arrest telephone call overheard by police said, "I got busted. . . . They got most of it." *Id.* at 687. The court affirmed the pas-

senger's conviction of possession, observing that "[p]resence in the same vehicle [with the contraband] supplemented by other incriminating evidence [the admissions to the police] . . . may suffice to show knowledge or intent to control." *Id.* at 687. However, noting that the statements made by the passenger did not inculpate the defendant Garcia, the court observed that the sum of the evidence against the defendant Garcia was his presence in the vehicle when the cocaine was discovered. That, in and of itself, was insufficient to infer that he knew of the cocaine.

There are the same difficulties in the instant case with the proof linking the defendant to possession of the cocaine found hidden in the car. Here, there is no evidence to show that the defendant was aware of the contents of the secret compartment where the cocaine was found; hence, a conviction on a charge of possession cannot be sustained. *Commonwealth* v. *Amendola*, 26 Mass. App. Ct. 713, 716-718 (1988). This case can be distinguished from cases in which other types of supplemental evidence connect the accused to the drugs. See, e.g., *Commonwealth* v. *James*, 30 Mass. App. Ct. 490, 495-496 (1991) (contraband identical in packaging and content to bags of cocaine discarded by defendant). See also *Commonwealth* v. *Gonzalez*, 42 Mass. App. Ct. 235, 238-240 & n.4 (1997), and cases cited.

Here, not only was evidence lacking of any similarity between the small amount of cocaine on the table and the larger cache found hidden in the car, but the evidence as to the characteristics of the cocaine on the table was conflicting. Detectives Valliere and Baginski indicated that what they saw on the table was cocaine powder in some type of wrapper. This testimony conflicts with the State laboratory report, which described the substance from the table as a "white chunk" of cocaine derivative, or "rock" cocaine. See note 4, *supra.*

There was no implied or actual admission by the defendant of possession, compare *Commonwealth* v. *Collins*, 11 Mass. App. Ct. 583, 585-586 (1981) (defendant admitted assisting in loading trunk where contraband found); see *Alicea* v. *Commonwealth*, 410 Mass. 384, 386-388 (1991) (driver's increased agitation as the police came upon the hidden contraband); nor was there other type of evidence linking him to the cocaine found hidden in the vehicle. Compare *Commonwealth* v. *Lucido*, 18 Mass. App. Ct. 941, 943 (1984) (defendant's control

over automobile and key to glove compartment and the presence of letters inside glove compartment where firearm found, sufficient to link him to gun). For cases in which there were other indicia of knowledge of contraband discovered inside a vehicle, see *Commonwealth* v. *Sabetti*, 411 Mass. 770, 776-780 (1992) (defendant found to have possession of drugs where interior of car was "virtual wasteland" of plainly visible contraband and he had attempted to flee from police officer); *Commonwealth* v. *Daley*, 423 Mass. 747, 751-752 (1996) (defendant alone driving unregistered vehicle with cocaine plainly visible on floor in front of driver's seat); *Commonwealth* v. *Perez*, 27 Mass. App. Ct. 550, 551-553 (1989) (open paper bag containing contraband wrapped in silver foil in plain view on floor of front seat inside car); *Commonwealth* v. *Dion*, 31 Mass. App. Ct. 168, 175-176 (1991) (among other evidence, defendant attempted to hide key to vehicle in which large amount of cash, inferably from drug deal, lay on front seat), and cases cited.

*Judgments reversed.*

*Verdicts set aside.*

*Judgments for the defendant.*