COMMONWEALTH *vs.* HENRY JAMES.

No. 00-P-1768.

Worcester. January 17, 2002. - May 13, 2002.

Present: PORADA, DOERFER, & MILLS, JJ.

Further appellate review granted, 437 Mass. 1106 (2002).

*Controlled Substances. Practice, Criminal,* Required finding.

At the trial of indictments alleging that the defendant trafficked in cocaine in an amount in excess of one hundred grams, the judge erred in denying the defendant's motion for a required finding of not guilty, where there was insufficient evidence that the defendant possessed the powder cocaine found in the attic of his apartment building or had the ability and intent to exercise dominion and control over it. [729-731]

INDICTMENT found and returned in the Superior Court Department on September 18, 1998.

The case was tried before *James P. Donohue,* J.

*Nadell Hill* for the defendant.

*Timothy J. Smyth,* Assistant District Attorney, for the Commonwealth.

MILLS, J. The defendant was convicted by a Superior Court jury of trafficking in cocaine in an amount in excess of 100 grams, G. L. c. 94C, § 32E(*b*)(3). On appeal he argues that (1) the judge improperly denied his motion for a required finding of not guilty; and (2) improper remarks in the prosecutor's closing argument created a substantial risk of a miscarriage of justice. We agree with the defendant regarding his first claim, and thus, it is unnecessary to review the defendant's second claim.

1. *Background.* On May 5, 1998, the Worcester police executed a search warrant for the third-floor, three-bedroom apartment located at 17 Cheever Street. Upon entry, the police secured seven individuals, including the defendant, who were in the apartment. The defendant, who had been in the kitchen

speaking on the telephone, made no attempt to flee and had to be asked to hang up the telephone. Nine hundred and fifty-one dollars in cash was found on his person and seized.

In one bedroom, the police found one piece of crack cocaine on the bed, one plastic baggie, and two more pieces of crack cocaine on a plate with a razor blade. In a second bedroom, the police discovered a smoldering crack pipe, one piece of crack cocaine on a plate, two razor blades, and cut-cornered baggies. In a third bedroom, the police found two razor blades on the windowsill, a scale, and some paperwork with notations indicating drug sales and transactions. Male clothing, a decorative heart-shaped wreath,[1] a cup with the defendant's picture on it, a key to the apartment, a cellular telephone and paperwork affiliated with both "Henry James" and "Roy Weston,"[2] including an automobile repair invoice in the name of "Roy Weston, 17 Cheever Street, Worcester, Mass.," were located in the third bedroom.

The living room and kitchen were sparsely appointed. The police discovered a pile of tools and a "Ray's Roofing, Call Us, Free Estimates" refrigerator magnet in the kitchen, as well as "Ray's Roofing Company" fliers throughout the apartment. A heat sealer, two boxes of sandwich bags, two bags filled with "small blue Ziplock baggies," a surgical mask, and paperwork indicating numbers "consistent with the sale and records kept in the sale of crack cocaine" were found in the pantry. Cut-cornered baggies lay in the trash on the third-floor porch. The police found a plastic margarine container with off-white residue[3] and one two-ounce bottle of inositol in the bathroom.[4]

The "triple decker" house sat in a congested neighborhood of similar homes and had a separate apartment on each floor. Each apartment had a back porch, connected by a common stairway to the yard at ground level, without a gate or other impediments to common passage. A shed, described as a "com-

---

[1]This wreath was hanging above the bed in the third bedroom and carried the legend: "I (picture of heart) you Roy." See note 2, *infra.*

[2]The defendant is also known as Roy Weston.

[3]The residue in the margarine bowl was never analyzed.

[4]Testimony at trial brought forth that inositol could be used as a cutting agent to dilute cocaine and that it is sold over the counter at health food stores as a dietary supplement.

mon structural feature of a three decker in the City of Worcester," appeared on each back porch. Each shed could be accessed from the porch, but not directly from the apartment units. The shed on the third floor porch was the only access point in the entire building that "eventually led to the attic," but again, the shed could not be accessed through the interior of the third-floor apartment. The shed was secured by a combination padlock that police pried off during their search.

Inside the shed, the police observed no tools or appliances and commented that there "may have been some boxes . . . but nothing significant." After making this determination, the police observed "a cutout, kind of an entrance square that they used to get into the attic. Anybody, I mean landlords, anybody [could use] it to get in to do repair work." This square "cutout" in the ceiling of the shed was the only access route to the attic and was "about maybe eight and a half, ten feet off the ground." Finding no ladder, the police officer "climbed up the side of the wall. Stepping between the boards and grabbing on . . . ," the officer pulled himself up and through the "cutout" to get into the attic.

Once inside the attic, the police discovered a flashlight, a sifter,[5] razor blades, four bottles of rubbing alcohol, and a bag within a bag with an outer plastic wrapper (bags) containing 102.17 grams of powder cocaine.[6] Fingerprints were found on the bottles of rubbing alcohol, but they did not match with any of the seven detained suspects, including the defendant. It appears that the bags were also examined for fingerprints; a witness testified that "if they found prints on [the bags, the prints] didn't match up with anybody." On cross-examination the same witness testified that "[t]here were fingerprints found, none connected to the individuals in this room." There was no evidence suggesting that the bags were similar to or matched the baggies found in the third-floor apartment. Moreover, police found in the attic no evidence, such as "personal items, paperwork, or anything," that was connected to the defendant or the other detained suspects.

[5]On the sifter was a white film that was never analyzed.

[6]No evidence was presented that indicated that the cocaine found in the attic was diluted with inositol.

2. *Required finding of not guilty.* The defendant contends that the trial judge improperly denied his motion for a required finding of not guilty because there was insufficient evidence that he constructively possessed the powder cocaine found in the attic. When reviewing the denial of a motion for a required finding of not guilty, "[w]e consider the evidence in the light most favorable to the Commonwealth to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Sinforoso,* 434 Mass. 320, 326 (2001), quoting from *Commonwealth* v. *Cordle,* 412 Mass. 172, 175 (1992).

"To sustain a conviction of trafficking in cocaine under G. L. c. 94C, § 32E, the Commonwealth must show that the defendant had 'possession' of the cocaine." *Commonwealth* v. *Sinforoso, supra* at 327. Absent evidence of actual possession, the Commonwealth must prove that the defendant had constructive possession. *Commonwealth* v. *Gonzalez,* 42 Mass. App. Ct. 235, 237 (1997). Constructive possession requires proof that the defendant knew of the location of the illegal drugs and had the ability and intent to exert dominion and control over them. *Ibid.* "The requisite proof of possession 'may be established by circumstantial evidence, and the inferences that can be drawn therefrom.' " *Ibid.,* quoting from *Commonwealth* v. *LaPerle,* 19 Mass. App. Ct. 424, 426 (1985).

In this case the defendant conceded that there was sufficient evidence of his connection to the apartment where he was arrested. At oral argument the defendant conceded that the evidence was sufficient to prove that he was "involved in the sale of crack cocaine," and that the apartment was, essentially, a "crack house." He argues however, that there was insufficient evidence that he was aware of the powder cocaine in the attic and had the ability and intent to exercise dominion and control over it. We agree.

Here, the attic was only accessible through the locked shed on the third-floor porch of a three-level, three-family apartment house. Nothing in the attic reasonably connected the defendant to the attic or the powder cocaine. Police found no fingerprints that matched any of the suspects. No direct evidence connected the defendant or his confederates to the combination lock, and

no fingerprints were taken from it. There was no demonstrable showing that the crack cocaine found in the apartment was derivative of the powder cocaine found in the attic, nor did the Commonwealth present any evidence to show similarities between the attic bags and the baggies found throughout the apartment. See *Commonwealth* v. *Movilis*, 46 Mass. App. Ct. 574, 577 (1999) (no evidence of any similarities in either quality or packaging between cocaine seized in car and substance seized from table in café). Nothing in the record indicated that the powder cocaine in the attic contained inositol, nor was there any evidence of any baking soda in the attic or third-floor apartment.[7] Furthermore, no one testified that the defendant conducted himself in a suspicious manner relative to the attic or did anything to indicate consciousness of guilt concerning the premises. *Commonwealth* v. *Movilis, supra* at 576. Contrast *Commonwealth* v. *Sinforoso, supra* at 328 (defendant appeared nervous and was sweating during encounter); *Alicea* v. *Commonwealth*, 410 Mass. 384, 387-388 (1991) (defendant's demeanor could support inference that he knew drugs were present); *Commonwealth* v. *Velasquez*, 48 Mass. App. Ct. 147, 150 (1999) (defendant did not disassociate himself from arrest and stated that he would be going to jail for two years). The Commonwealth presented no evidence concerning the occupants of the first and second floor units, the physical characteristics of those units, the general characteristics of the neighborhood, or the building owner. Further, there was no evidence from the building owner regarding access to the attic by the defendant or others.

In *Commonwealth* v. *Booker*, 31 Mass. App. Ct. 435, 438 (1991), we concluded that the Commonwealth had failed to meet its burden of proof on the question of possession where evidence was admitted to show that the defendant resided in an apartment where drugs were recovered, but that the contraband was found in a common area to which the defendant had no special connection, and certainly no right of control. Here, the

---

[7] A police officer testified that baking soda is needed to convert powder cocaine into rock cocaine. "[The cocaine] also could be cooked up into crack cocaine in which it would be boiled using baking soda."

record is likewise devoid of sufficient evidence connecting the defendant to the common — even public — area in which the powder cocaine was discovered.[8]

Similarly in *Commonwealth* v. *Hill*, 51 Mass. App. Ct. 598, 604 (2001), we determined that possession of ammunition found in the basement of the defendant's apartment building could not be imputed to the defendant absent some evidence specifically linking him to the basement. As we stated in that case:

> "The Commonwealth introduced nothing indicating that Hill had at any time been present in the cellar or was aware of its contents. Neither did the Commonwealth claim to have found in the cellar any items identifiably belonging to or associated with [the defendant], such as personal papers or effects . . . ."

Precisely the same void existed in the Commonwealth's evidence here. As in *Hill* and *Booker*, the evidence of possession was insufficient as matter of law.

*Judgment reversed.*

*Verdict set aside.*

*Judgment for the defendant.*

---

[8]As noted above, a police witness testified that the attic was a place where "landlords, anybody . . . [could] do repair work."