COMMONWEALTH *vs.* BRIDGETTE BOOKER.

No. 90-P-269.

Suffolk. June 7, 1991. - October 1, 1991.

Present: ARMSTRONG, BROWN, & GREENBERG, JJ.

*Controlled Substances.*

At the trial of an indictment for trafficking in cocaine, there was insufficient evidence to support a finding that the defendant was involved with and had control over the cocaine seized by police in her apartment. [437-439]

INDICTMENT found and returned in the Superior Court Department on October 6, 1988.

The case was tried before *Robert V. Mulkern,* J.

*John A. Amabile* for the defendant.

*Lauren Inker,* Assistant District Attorney, for the Commonwealth.

GREENBERG, J. Following a jury trial, the defendant, Booker, was convicted of trafficking in cocaine in violation of G. L. c. 94C, § 32E,[1] and sentenced under the mandatory scheme to a minimum five-year State prison term. Her sole contention on appeal is that the trial judge erred in denying her motion for a required finding of not guilty filed at the close of the Commonwealth's case and renewed after the jury returned its verdict.

Because Booker was arrested outside her apartment building and because she disclaimed any personal knowledge or control over the contraband found inside, the jury considered the trafficking indictment against her on a theory of constructive possession. See, e.g., *Commonwealth v. Arias,* 29

---

[1] Two codefendants, Ramon Mecado and Richard James, were indicted on the same charge, but the judge severed their cases for trial.

Mass. App. Ct. 613, 618 (1990), *S.C.*, 410 Mass. 1005 (1991). Booker claims that there was insufficient evidence to support a finding of constructive possession, and we agree.

I. *Facts.* The jury could have found the following facts. At midday, on Sunday, September 4, 1988, two Boston police officers, Robert Burns and John Newman, responded to reports of gunfire at a twelve-unit apartment building at 195 Quincy Street in Dorchester. As the officers drove through the intersection of Howard Avenue and Quincy Streets, they observed two men and a woman fighting outside 195 Quincy Street.[2] Booker was struggling between the two men, one of whom was brandishing a gun. Pulling their cruiser up close to the disturbance, the officers drew their service revolvers, prompting the armed male, Ramon Mecado, to dash into the hallway of 195 Quincy Street. The officers, after searching Booker and James and placing them in the back seat of the cruiser, called for back-up support. According to Burns, Booker could see the gunman inside a first-floor apartment and screamed, "My child's in there." When the back-up unit arrived, two officers entered the building and knocked on the door of the apartment thought to belong to Booker. They heard "a woman and some — two kids screaming inside [the] apartment."

The apartment door opened to a terrified woman holding two infants.[3] Two officers ushered the woman and children to safety, while two others searched the apartment for Mecado. They found him hiding in a closet in the rear bedroom. Just outside the only window in the bedroom, the police recovered a revolver. As Officer Burns was passing through the living room, he saw a "basic kitchen plate" on the floor protruding from beneath the couch. On the plate were two large glassine bags of what later proved to be 61.98 grams of seventy-seven percent pure cocaine. Cocaine was "spilling out" of the bags.

---

[2]At the police station, the two males identified themselves as Ramon Mecado of 112 Magnolia Street and Richard James of 84 Woodruff Way in Roxbury.

[3]This woman was later identified as Booker's cousin, Tracy Handy, who also lived in the apartment.

The police discovered no other hidden contraband or paraphernalia in the apartment.

At the time of Booker's arrest, the police found no incriminating evidence on her person: the only connection between her and the cache was its presence in her apartment.[4]

II. *Motion for required finding of not guilty.* At the close of the Commonwealth's case and once again before the judge submitted the case to the jury, defense counsel moved for a required finding of not guilty as to whether Booker "knew of the presence of [the] cocaine and had the ability and intention to exercise dominion and control over it." *Commonwealth* v. *Handy*, 30 Mass. App. Ct. 776, 780 (1991), quoting from *Commonwealth* v. *Arias*, 29 Mass. App. Ct. at 618. As often reiterated, the "essential question in evaluating the denial of a motion for a required finding of not guilty is whether the evidence received, viewed in a light most favorable to the Commonwealth, is sufficient so that the jury 'might properly draw inferences, not too remote in the ordinary course of events, or forbidden by any rule of law, and conclude upon all the established circumstances and warranted inferences that the guilt of the defendant was proved beyond a reasonable doubt.'" *Commonwealth* v. *Pope*, 406 Mass. 581, 584 (1990), quoting from *Commonwealth* v. *Clary*, 388 Mass. 583, 588 (1983).

Mere presence in the vicinity of a controlled substance, even if one knows that the substance is there, does not amount to possession. See *Commonwealth* v. *Deagle*, 10 Mass. App. Ct. 563, 566-568 (1980). See also *Commonwealth* v. *Garcia*, 409 Mass. 675, 687-688 (1991). Nor is possession proved simply through the defendant's association with a person who controlled the contraband, see *Commonwealth* v. *Saez*, 21 Mass. App. Ct. 408, 413 (1986), or by

---

[4]There was little direct evidence on the question whether the apartment belonged to Booker. Upon her arrest, Booker gave her address as 195 Quincy Street; however, that building contained twelve apartments. The jury expressed their confusion when they interrupted their deliberations and submitted the following question to the judge: "Does the police report show that Bridgette lived in the apartment?" The judge referred them to "the evidence [they] heard in the courtroom."

sharing the premises where the narcotics were found, cf. *Commonwealth* v. *O'Brien*, 305 Mass. 393, 401 (1940) (defendant's access to vault shared by others not enough to show he took missing money). Contrast *Commonwealth* v. *Beverly*, 389 Mass. 866, 868, 870 (1983) (codefendant's wife participated in the concealment of white powder seized during a search of the marital apartment); *Commonwealth* v. *Pratt*, 407 Mass. 647, 652-653 (1990) (contraband found in proximity to personal effects of defendant in apartment shared with codefendant). Proximity and knowledge do not establish possession unless they permit an inference of control. *Commonwealth* v. *Deagle*, 10 Mass. App. Ct. at 567.

Here, there is neither any evidence warranting an inference of control nor any "other incriminating evidence [which] 'will serve to tip the scale in favor of sufficiency.'" *Commonwealth* v. *Albano*, 373 Mass. 132, 134 (1977), quoting from *United States* v. *Birmley*, 529 F.2d 103, 108 (6th Cir. 1976). The evidence showed (1) that Booker shared the apartment with at least one other person; (2) that the gunman had been in the apartment for a period of several minutes immediately before and during the discovery of the contraband; (3) that Booker was not present in the apartment at the time of the discovery, contrast *Commonwealth* v. *Pratt*, 407 Mass. 647, 651-652 (1990); (4) that Booker evinced no consciousness of guilt nor carried any suspect paraphernalia or large amounts of cash, contrast *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 410 (1989); and (5) that the narcotics were found in a common area, the living room, contrast *Commonwealth* v. *Rarick*, 23 Mass. App. Ct. 912 (1986) (in shared dwelling, possession of a controlled substance may be inferred from proximity to the defendant's effects in areas particularly linked to the defendant). See also *Commonwealth* v. *Gill*, 2 Mass. App. Ct. 653, 656-657 (1974); *Commonwealth* v. *Nichols*, 4 Mass. App. Ct. 606, 612-613 (1976); *Commonwealth* v. *Rodriquez*, 16 Mass. App. Ct. 944, 945-946 (1983).

On this record, the Commonwealth, at the time it rested its case, had established no basis for a belief beyond a rea-

sonable doubt that Booker constructively possessed the cocaine seized by the police in the first-floor apartment of 195 Quincy Street. Compare *Commonwealth* v. *Williams*, 3 Mass. App. Ct. 370, 371-372 (1975); *Commonwealth* v. *Duffy*, 4 Mass. App. Ct. 655, 660 (1976). Accordingly, we conclude that the evidence of the defendant's involvement with and control over the cocaine was insufficient to warrant a finding of guilt and that it was error to submit the case to the jury. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979).

*Judgment reversed.*
*Verdict set aside.*
*Judgment for the defendant.*