COMMONWEALTH *vs.* JAMIE CRUZ.

No. 91-P-828.

Worcester. May 6, 1993. - June 18, 1993.

Present: ARMSTRONG, FINE, & GILLERMAN, JJ.

*Controlled Substances. Practice, Criminal,* Required finding.

At the trial of an indictment for trafficking in cocaine, there was insuffi-
cient evidence of the defendant's possession of the cocaine to sustain his
conviction where, although there was sufficient circumstantial evidence
to support an inference that the defendant knew of the presence of a
quantity of the drug in an apartment he shared with others, the Com-
monwealth failed to prove that the defendant had the ability and inten-
tion to exercise dominion and control over it. [621-624]

INDICTMENTS found and returned in the Superior Court
Department on January 18, 1991.

The cases were tried before *Robert V. Mulkern*, J.

*David Hayes Erickson* for the defendant.

*William E. Loughlin*, Assistant District Attorney, for the
Commonwealth.

FINE, J. The defendant was convicted of several offenses
after a jury trial in Superior Court, but this appeal concerns
only his conviction for trafficking in cocaine (G. L. c. 94C,
§ 32E[*b*][2]).[1] We agree with his contention that there was
insufficient evidence of his possession of the cocaine to sus-
tain the verdict.

According to the Commonwealth's evidence, at about
10:30 P.M. on August 16, 1990, Worcester police officers con-
ducted a warranted search of a sparsely furnished two-bed-

---

[1] The Commonwealth concedes that there was insufficient evidence con-
cerning the defendant's conviction of trafficking in cocaine in a school
zone. G. L. c. 94C, § 32J. Accordingly, we reverse that conviction. The
defendant was also convicted of charges which were either dismissed or
placed on file.

room apartment on the second floor of a three-family house. Upon arrival at the building in which the target apartment was located, an officer observed the defendant run from the living room window. The officers broke down the front door of the apartment, and, as they spilled in, saw the defendant running from the living room toward the kitchen. He was holding a television remote control. Two other men were in the apartment: Carlos Padilla in the living room; and Leonte Arias in the front bedroom. In the living room was a couch and a television set. The front bedroom contained a mattress, a dresser, a box of stereo equipment, and some men's shirts in a closet. In addition, in the front bedroom the police found 69.26 grams of cocaine, a small amount of marihuana, and packaging materials for the cocaine. No drugs (or anything else of significance to the investigation) were found on the person of either the defendant or Padilla or elsewhere in the apartment. On Arias's person the police found three small bags of cocaine, a key to the apartment, and some cash. A receipt for a purchase unrelated to the drugs, made out to Arias, was found in the dresser in the front bedroom. A rent receipt for the apartment made out to an individual who was not present was also found. An experienced narcotics officer testified that the landlord named on the receipt frequently rented apartments to drug dealers, and, based upon the identity of the landlord, the sparse furnishings,[2] the quantity of drugs and packaging materials, and the absence of any diluting materials, in the officer's opinion, the apartment was being used for the retail sale of cocaine. The officer also testified that, when asked where he lived, the defendant had responded, "Here."

The defendant's motion for a required finding of not guilty at the close of the Commonwealth's case was denied.[3] In re-

---

[2]No evidence was presented as to the contents of any of the rooms in the apartment other than the living room and the front bedroom.

[3]The defendant then presented evidence to the effect that he lived with his mother in Dorchester. He testified that he was a drug user, that he travelled to Worcester with Padilla to obtain cocaine to use, not to engage in the sale of drugs, and that the reason he told the officer that he lived in the apartment was because he was high and nervous.

viewing the denial of the motion, "[w]e look to see whether any rational trier of fact, taking the evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth, could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Arias*, 29 Mass. App. Ct. 613, 617 (1990), *S.C.*, 410 Mass. 1005 (1991), citing *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), and *Commonwealth* v. *Merola*, 405 Mass. 529, 533 (1989).

It was a reasonable inference, based upon the evidence, that drugs were being packaged for sale in the front bedroom at the time of the search. There was a sufficient quantity of cocaine found to warrant the defendant's trafficking conviction if he was in possession of the drugs. The Commonwealth need not prove that the defendant physically possessed the cocaine. Rather, "[p]ossession may be constructive; it need not be exclusive; and it may be proved by circumstantial evidence." *Commonwealth* v. *Rivera*, 31 Mass. App. Ct. 554, 556 (1991), citing *Commonwealth* v. *Dinnall*, 366 Mass. 165, 168-169 (1974). For constructive possession to be found, the defendant had to know of the presence of the cocaine, and he had to have the ability and intention to exercise dominion and control over it. *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 409 (1989). There was sufficient circumstantial evidence to support an inference that the defendant knew of the presence of cocaine. The determinative question, therefore, is whether the Commonwealth proved that the defendant had the ability and intention to exercise dominion and control over the cocaine.

Although the defendant admitted that he lived in the apartment, the drug activity was limited to the front bedroom, not a common area. Compare *Commonwealth* v. *Rarick*, 23 Mass. App. Ct. 912 (1986) (in shared dwelling, possession of controlled substance may be inferred from proximity to the defendant's effects in areas particularly linked to the defendant). There was other evidence, most importantly, the key to the apartment found in Arias's possession, suggesting that Arias also lived in the apartment. There

was no basis for assuming that the defendant slept in the front bedroom as there was a second bedroom in the apartment and a couch in the living room. There was compelling evidence tying the drugs in the front bedroom to Arias. He was in that room with the drugs when the police entered the apartment; his papers were found in the room; and he had on his person packages of cocaine similar to those found in the room. The defendant, on the other hand, was never tied to the front bedroom. He was first seen at the living room window, and then in the kitchen, and nothing of his was found in the front bedroom. No drugs were found on his person.

"Mere presence in the vicinity of a controlled substance, even if one knows that the substance is there, does not amount to possession . . . . Nor is possession proved simply through the defendant's association with a person who controlled the contraband . . . or by sharing the premises where the narcotics were found . . . . ." *Commonwealth* v. *Booker,* 31 Mass. App. Ct. 435, 437-438 (1991) (citations omitted). The Commonwealth's evidence in this case was insufficient to prove that the defendant had joint control with Arias over the cocaine found in the front bedroom. See *Commonwealth* v. *James,* 30 Mass. App. Ct. 490, 500 (1991) (conviction overturned where no evidence connected defendant to bedroom in which marihuana was found, and evidence equally consistent with inference that marihuana operation was separate enterprise of one engaged in packaging when police arrived); *Commonwealth* v. *Rivera,* 31 Mass. App. Ct. at 558 (conviction overturned where defendant occupant of an apartment was not tied to bedroom occupied by another in which drugs were found); *Commonwealth* v. *Brown, ante* 222, 225-227 (1993) (conviction overturned where defendant admitted living in apartment in which drugs were found in a bedroom, but no evidence linked the defendant to that bedroom). Contrast *Commonwealth* v. *Rugaber,* 369 Mass. 765, 769 (1976); *Commonwealth* v. *Pratt,* 407 Mass. 647, 652 (1990); *Commonwealth* v. *Nichols,* 4 Mass. App. Ct. 606, 613 (1976); *Commonwealth* v. *Rodriquez,* 16 Mass. App. Ct. 944, 945-946 (1983).

The Commonwealth relies in part on the evidence of the defendant's "flight." At most, the Commonwealth established that the defendant was sitting at a window when he saw the police drive up in a van, that in response he ran from the window, and that, when the police entered the apartment, the defendant was running from the living room toward the kitchen. The evidence, proving neither that the defendant tried to flee the apartment, nor that he made any effort to protect the contraband, is hardly sufficient to tip the scale in favor of sufficiency. See *Commonwealth* v. *Handy*, 30 Mass. App. Ct. 776, 781 (1991). Contrast *Commonwealth* v. *Brzezinski*, 405 Mass. at 410; *Commonwealth* v. *James*, 30 Mass. App. Ct. at 497-498. Behavior tending to show that the defendant knew of the presence of drugs in the apartment or that he was guilty of some offense is not sufficient, by itself, to prove that he had the ability and intent to control the drugs. See *Commonwealth* v. *Caterino*, 31 Mass. App. Ct. 685, 689 (1991).

Finally, the Commonwealth contends that, notwithstanding the absence of evidence specifically tying the defendant to the drugs in the front bedroom, it presented sufficient evidence under *Commonwealth* v. *Arias*, 29 Mass. App. Ct. 613 (1990), *S.C.*, 410 Mass. 1005 (1991). In that case, both this court and the Supreme Judicial Court affirmed convictions of all five occupants of a heavily barricaded, sparsely furnished apartment, searched by the police at 5:45 A.M., in which large quantities of drugs, cash and drug paraphernalia were found, even in the absence of particularized evidence of the knowledge and behavior of the individual defendants. There was evidence, in addition, that, upon the arrival of the police, the occupants made efforts to dispose of the drugs and that drug sales had been made from the apartment. Because of the significant differences between the two cases, *Arias* does not govern. Apart from the numerous factual differences (for example, as to the time of day of the search and whether the entrances were barricaded), it is of significance that in *Arias* the drugs and paraphernalia were found throughout the apartment and were not linked to any one individual,

whereas in the instant case the drugs and related activity were confined to one bedroom and were linked to an individual other than the defendant. In *Arias*, the evidence gave rise to a reasonable inference that *all* of the occupants of the apartment were involved in the drug enterprise. No such reasonable inference could be drawn in the instant case.

The judgments are reversed, the verdicts are set aside, and new judgments are to be entered for the defendant.

*So ordered.*