## COMMONWEALTH *vs.* CHARLES M. HENAULT.

No. 99-P-2159.

Berkshire. August 17, 2001. - February 21, 2002.

Present: BROWN, PORADA, & LAURENCE, JJ.

*Motor Vehicle,* Leaving scene of accident. *Practice, Criminal,* Required finding.

At the trial of an indictment charging the defendant with a violation of G. L. c. 90, § 24(2)($a^{1}/_2$)(2), there was sufficient circumstantial evidence to prove beyond a reasonable doubt that the defendant left the scene of the accident with the intent to avoid prosecution or evade apprehension, where the jury could infer that the defendant was acutely conscious of his guilt from the circumstances of his flight. [11-17]

INDICTMENT found and returned in the Superior Court Department on December 18, 1998.

The case was tried before *Thomas J. Curley, Jr.,* J.

*David A.F. Lewis* for the defendant.

*Joseph A. Pieropan,* Assistant District Attorney, for the Commonwealth.

LAURENCE, J. There is no dispute regarding the basic facts underlying the conviction of Charles M. Henault (the defendant) for violation of G. L. c. 90, § 24(2)($a^{1}/_2$)(2).[1] Sometime before

[1]That statute (referred to hereafter as "subsection 2"), as inserted by St. 1991, c. 460, § 2, provides, in pertinent part: "Whoever operates a motor vehicle upon any way or in any place to which the public has a right of access or upon any way or in any place to which members of the public shall have access as invitees or licensees and without stopping and making known his name, residence and the registration number of his motor vehicle, *goes away to avoid prosecution or evade apprehension* after knowingly colliding with or otherwise causing injury to any person shall, if the injuries result in the death of a person, be punished by imprisonment in the state prison for not less than two and one-half years nor more than ten years and by a fine of not less than one thousand dollars nor more than five thousand dollars or by imprisonment in a jail or house of correction for not less than one year nor more than two

9 P.M. on Saturday, October 17, 1998, the defendant, a life-long resident of Pittsfield, had left a friend's home and was driving westbound on Crane Avenue. During the three hours prior to his departure, he had been drinking beer with his friend. Crane Avenue is a two-lane road in Pittsfield on which the defendant had traveled many times before, including earlier in the day. Swerving from the westbound to the eastbound lane on a "straightaway" leading to a bridge, he collided with a fifteen year old boy riding a bicycle also heading westbound. The impact threw the victim against the defendant's vehicle with such force that its hood was dented and its windshield shattered, rendering it opaque. The victim's body then bounced off the vehicle into the granite curbing. The defendant, though realizing he had hit a person, did not stop to identify himself at the scene or to call the police or emergency personnel. He rapidly drove to his home about two and one-half miles from the accident site. In order to see the road as he drove home, the defendant was compelled to lean out the driver's window.

The evidence presented by the Commonwealth allowed the jury to find the following additional relevant facts. See note 7, *infra*. In the three hours prior to leaving his friend's home, the defendant consumed at least four twelve-ounce cans of beer, without eating a full meal. The posted speed limit on Crane Avenue was, to the defendant's knowledge, thirty miles per hour, and at the time of the accident the avenue was under construction, covered with rough pavement and obstructions such as exposed manhole lids and barrels. The evening was "very dark" and moonless, and the stretch of road where the accident occurred was "poorly lit." The defendant was nonetheless traveling at a speed of between forty-five and fifty-six miles per hour just before he rammed the victim, skidding for

and one-half years and by a fine of not less than one thousand dollars nor more than five thousand dollars" (emphasis added).

The defendant's appeal challenges the trial judge's denials of his motions for a required finding of not guilty (made after the Commonwealth's case and at the close of all the evidence), which were not, however, based on his present argument, that the Commonwealth did not present sufficient evidence of his intent "to avoid prosecution or evade apprehension," a necessary element of the statutory offense. We nonetheless address his argument to insure that all necessary elements of the crime charged were proved beyond a reasonable doubt. See *Commonwealth* v. *Sims*, 30 Mass. App. Ct. 25, 25 n.1 (1991).

approximately fifty-six feet from the moment he first locked his brakes.

The defendant did not stop or open his car door after striking the victim but "slowed down a little bit, then sped away, as fast as [he] could." The victim had been riding with two friends. Although the now-unconscious victim was experiencing "a good amount of blood loss," one of the friends felt a slight pulse and decided to stay with the victim while the other rode his bicycle to a nearby restaurant to call the emergency assistance telephone number (911). An emergency ambulance appeared at the scene about fifteen minutes after the collision. Upon examining the victim at the hospital to which he was taken, at some unspecified later time, a neurologist declared him brain dead.

As the defendant fled down Crane Avenue, he passed by "hundreds" of homes and several businesses that he knew had telephones and would be open at that hour, including a social club, a gas station, and a pizza restaurant. He stopped at none of them, nor at a police station which he knew was only one-half mile from his home, but instead went directly to his house, arriving there about six minutes after leaving the accident scene. Although his wife urged him to call 911 about the accident after he told her about it, he did nothing for approximately twelve minutes. Finally, he called directory assistance for the general, non-emergency telephone number of the Pittsfield police department, which he then called and, in a calm and collected voice, stated to the police operator, "I'm the person that hit the kid on Crane Avenue." He said nothing about the severity of the accident or the need for medical assistance for the injured cyclist.

Twenty minutes later, a police officer arrived at the defendant's home and immediately informed him of his legal rights. The defendant said that he had hit a person on a bicycle on Crane Avenue, then "panicked" and drove straight home.[2] The officer noticed an odor of alcohol coming from the defendant

---

[2]Testifying in his own behalf at trial, the defendant changed his story, from having fled the scene because he "panicked" to having fled because he "got scared" after he heard the victim's friend "screaming and swearing" at him, causing him to fear for his safety if he remained to identify himself and render assistance.

and administered several field sobriety tests, which the defendant performed adequately. The officer then brought the defendant to the police station, where he voluntarily gave a written statement about the accident consistent with the above facts (although asserting he was only traveling twenty-five to thirty miles an hour when the accident occurred and that the victim suddenly "drove in front of [his] car," and failing to mention the many opportunities he had forgone to summon help on the way home or his delay in calling anyone after arriving home).[3]

The defendant's sole point on appeal is that the Commonwealth presented insufficient evidence to prove beyond a reasonable doubt that he had left the scene of the accident with the intent "to avoid prosecution or evade apprehension," a crucial element of his indictment under subsection 2.[4] Our review of the record leaves us convinced that all necessary elements of the crime charged were proved beyond a reasonable doubt, including the requisite intent.[5]

Although the defendant acknowledges, in passing, that the

---

[3]At trial, the defendant explained his ignoring his wife's urging him to call 911 and his delay in notifying anyone by claiming that he "emotionally broke down" and was so "distraught" that he could only make a telephone call after he had cried for many minutes. He communicated none of these details to the police on the evening of the incident, and his calm and collected call to the police (played on tape for the jury) appeared to belie his claimed distraught state.

[4]See note 1, *supra*. The defendant does not challenge the adequacy of the evidence as to his going away from the accident scene without stopping and identifying himself after knowingly colliding with and injuring the victim, resulting in the victim's death. Nor does he contend that any of the Commonwealth's evidence was legally irrelevant, i.e., lacking a rational tendency to prove an issue in the case or not making a desired inference more probable than it would otherwise be. *Commonwealth* v. *Pare*, 43 Mass. App. Ct. 566, 572 (1997), *S.C.*, 427 Mass. 427 (1998).

[5]See note 4, *supra*, and note 6, *infra*. No reported Massachusetts decision has discussed the language in subsection 2 requiring proof that a defendant who knowingly leaves the scene of a collision causing death without identifying himself "goes away to avoid prosecution or evade apprehension." The Commonwealth cites this court's decision in *Commonwealth* v. *Donohue*, 41 Mass. App. Ct. 91 (1996), as supporting the defendant's conviction. However, *Donohue* involved a conviction under the companion but different statute, G. L. c. 90, § 24(2)($a^{1/2}$)(1) (hereinafter "subsection 1"). Subsection 2, at issue here, is almost identical to subsection 1, except that (a) it applies only if the defendant's operation causes a death rather than injury; (b) it adds the ele-

Commonwealth's evidence is to be evaluated in light of the familiar standards set forth in *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), and the body of precedent it has engendered, he ignores the breadth of the *Latimore* principles.[6]

ment that the defendant "goes away to avoid prosecution or evade apprehension" after the collision; and (c) it imposes a maximum term of imprisonment of ten rather than two years.

In *Donohue* (which, for reasons unexplained by the Commonwealth in that case, involved a defendant's operation causing death rather than injury but was nonetheless prosecuted as a violation of subsection 1), this court affirmed a guilty verdict because the jury could have reasonably inferred from the circumstantial evidence that the defendant did not make herself known to the victim or others at the scene of the accident she knew she had caused (as required by both subsections). 41 Mass. App. Ct. at 93-94. We rejected the argument that it was impossible to comply with the statute because the victim was unconscious and the area was deserted, in the face of evidence that the defendant (who also claimed she had "panicked") knowingly drove by at least five working pay phones on the way back to her apartment after the accident. *Id.* at 94-95. While *Donohue* is factually similar and supports the Commonwealth's case on the other elements of the crime charged, most importantly the requirement to stop and make the required disclosures, it does not explicitly address subsection 2's additional language of "goes away to avoid prosecution or evade apprehension."

That language, and the bifurcation between subsections 1 and 2, appeared in the "leaving the scene" statute only in 1991 (see St. 1991, c. 460), but without any legislative explanation or relevant legislative history that we have been able to discern — once again, unfortunately, confirming our early recognition of G. L. c. 90, § 24(2), as "a patchwork of judicial decisions and legislative engraftments which beclouds any clear perception of legislative intent." *Commonwealth* v. *Kraatz*, 2 Mass. App. Ct. 196, 200 (1974). A survey of the statutes and case law of other jurisdictions has not been illuminating, since none has a statute containing the "avoid or evade" language of subsection 2. All but one have no intent or motive requirement but simply impose on drivers a strict duty to stop and comply with disclosure requirements after knowingly causing a collision or injury (consistent with the Uniform Vehicle Code §§ 10-102-104 [1968]). The Oklahoma statute is the only exception, but its operative language — condemning "[a]ny person willfully, maliciously, or feloniously failing to stop [and make the required disclosures] to avoid detection or prosecution," Okla. Stat. tit. 47, §§ 10-102 & 10-102.1 (Supp. 2000) — is different enough to be unhelpful and remains unconstrued by any reported decision.

[6]The applicable standards have been recently restated:

" ' "[The] question is .whether, after viewing the evidence [and all permissible inferences] in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting *Jackson* v. *Virginia*, 443 U.S. 307, 318-

Applying them here (and assuming, as we must, that the "avoid or evade" language adds an element of culpable intent to subsection 2 that must be established by the Commonwealth, see *Commonwealth* v. *McMenimon*, 295 Mass. 467, 469 [1936]; *Commonwealth* v. *Wallace*, 14 Mass. 358, 363 n.11 [1982]), we conclude that there was more than sufficient circumstantial evidence for the jury to find beyond a reasonable doubt that the defendant fled the accident scene with the intent to conceal his identity and avoid prosecution or evade apprehension for a series of criminal acts he knew or thought he had committed up to and including causing the fatal collision.[7]

The defendant having consumed at least four twelve-ounce

---

319 (1979). See Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979). . . . [C]ircumstantial evidence is competent to establish guilt beyond a reasonable doubt. *Commonwealth* v. *Nadworny*, 396 Mass. 342, 354 (1985), cert. denied, 477 U.S. 904 (1986). An inference drawn from circumstantial evidence "need only be reasonable and possible; it need not be necessary or inescapable." *Commonwealth* v. *Beckett*, 373 Mass. 329, 341 (1977). . . .' *Commonwealth* v. *Gilbert*, 423 Mass. 863, 868 (1996). Moreover, the evidence and the permissible inferences therefrom need only be sufficient to persuade 'minds of ordinary intelligence and sagacity' of the defendant's guilt. *Commonwealth* v. *Latimore*, 378 Mass. at 677. Fact finders are not 'required to divorce themselves of common sense, but rather should apply to facts which they find proven such reasonable inferences as are justified in the light of their experience as to the natural inclinations of human beings.' *Commonwealth* v. *Arias*, 29 Mass. App. Ct. 613, 618 (1990), quoting from *United States* v. *Smith*, 680 F.2d 255, 260 (1st Cir. 1982), cert. denied, 459 U.S. 1110 (1983). To the extent that conflicting inferences are possible from the evidence, it is for the fact finder to resolve the conflict. *Commonwealth* v. *Wilborne*, 382 Mass. 241, 245 (1981)."

*Commonwealth* v. *Russell*, 46 Mass. App. Ct. 307, 308-309 (1999). That resolution is to be effected "not by hard and fast rules of law, but by experience and common sense." *Commonwealth* v. *Drew*, 4 Mass. App. Ct. 30, 32 (1976). Moreover, permissible inferences may be premised not just on independently proven facts but also on other reasonable and possible inferences, provided there is "a reasonable and logical" connection between each inference. *Commonwealth* v. *Dostie*, 425 Mass. 372, 375-376 (1997). Finally, the Commonwealth's evidence is evaluated under these standards "notwithstanding the contrary evidence presented by the defendant." *Commonwealth* v. *Rivera*, 425 Mass. 633, 648 (1997).

[7]The defendant contends that the only evidence presented at trial as to his intent (by which he means his own testimony) established that he was "scared for his safety after the collision" and "rushed directly home . . . to call the

cans of beer without a meal just prior to the collision, and having the odor of alcohol still lingering on his breath when interviewed by the police, it was reasonable for the jury to infer that he fled from the scene to avoid detection and possible arrest for driving while under the influence of alcohol. From the testimony, particularly the defendant's acknowledged familiarity with Crane Avenue, and the accident reconstruction evidence — demonstrating that the defendant was exceeding the speed limit despite the bad light and road conditions, was traveling on the wrong side of the road at the time of the accident, and was aware that he had smashed into a bicyclist with such force that his windshield was destroyed and the victim was hurled first against his car and then into the granite curbing at the side of the road — the jury could infer that he realized he had been

authorities" and that he "never intended not to call the police." See note 2, *supra*. His contention ignores the reality that the jury were free to discredit such testimony which, as noted above, was not consistent with either his pretrial statements or the testimony of the Commonwealth's witnesses or his conduct between the time of the collision and the time he finally called the police. (Indeed, the defendant's credibility with the jury may have been additionally impaired when, during cross-examination, he asserted a previously unmentioned defense of his conduct at the time of the accident, namely, that "everything went black"). We decline to label the intent element of subsection 2 as "specific" or "general," given the confusion those terms have caused in the courts, see *Commonwealth* v. *Gunter*, 427 Mass. 259, 268-269 (1998); *Commonwealth* v. *Sibinich*, 33 Mass. App. Ct. 246, 249 (1992), even though the language — in which someone must act ("goes away"), thereby attempting to achieve a particular outcome ("to avoid prosecution or evade apprehension") — implies something akin to specific intent as commonly understood. See *Commonwealth* v. *Blake*, 409 Mass. 146, 151 (1991) (defining specific intent in terms of "focused . . . purpose"). See also *Commonwealth* v. *Collier*, 427 Mass. 385, 388 n.4 (1998). For present purposes we are satisfactorily guided by our recognition that "intent is a matter of fact, which is often not susceptible of proof by direct evidence, so resort is frequently made to proof by inference from all the facts and circumstances developed at the trial." *Commonwealth* v. *Casale*, 381 Mass. 167, 173 (1980). Those inferences in turn may be drawn under the flexible standards described in note 6, *supra*, i.e., the jury may make reasonable and possible inferences as to the defendant's mental state based entirely on circumstantial evidence, *Commonwealth* v. *Smith*, 368 Mass. 126, 128 (1975), from which (contrary to the defendant's insinuated denigration thereof) "[a] web of convincing proof [beyond a reasonable doubt] can be made . . . ." *Commonwealth* v. *Best*, 381 Mass. 472, 483 (1980). See *Commonwealth* v. *Dostie*, 425 Mass. at 375; *Commonwealth* v. *LaVoie*, 9 Mass. App. Ct. 918 (1980).

driving in a reckless or dangerous fashion and had caused a serious injury, giving him several reasons to evade the police and possible prosecution.

The jury could further infer that the defendant was acutely conscious of his guilt[8] given the circumstances of his flight. Knowing that there were persons at the scene, which obligated him under the statute (so the jury were correctly instructed) to stop and make the required disclosures "on the spot and immediately," *Commonwealth* v. *Horsfall*, 213 Mass. 232, 236 (1913), he nonetheless fled because remaining there would have exposed him to police scrutiny and accusation. So determined was he to avoid identifying himself, with the resulting risk of apprehension, that he sped away though unable to see through his windshield and having to drive two and one-half miles in the darkness with his head stuck out his rolled-down window. Cf. *People* v. *Scheer*, 68 Cal. App. 4th 1009, 1022 (1998) ("precipitous flight . . . reflects an intent on the part of appellant to conceal his involvement in the collision"). Though realizing that he had seriously injured someone who almost assuredly needed prompt medical assistance, he not only failed to render or summon aid but also knowingly bypassed numerous businesses and hundreds of homes from which he could have called for such assistance in his effort to evade the apprehended criminal consequences of providing such information. Cf. *Commonwealth* v. *Donohue*, 41 Mass. App. Ct. 91, 94 (1996) ("[T]he statute would have been satisfied if the defendant had . . . left to find a telephone and [had] immediately called the police and [given] the necessary information"). His desire to avoid identification and responsibility for the collision was further indicated by his not driving to the police station that was only a short distance from his home to make a report. Upon arriving at his home, he did not immediately call for emergency assistance (ignoring his wife's advice to do so) or inform the authorities of his involvement in the incident, but rather reflected an intent to conceal that involvement by continuing to do noth-

---

[8]The jury were properly instructed in accordance with the consciousness of guilt guidelines of *Commonwealth* v. *Toney*, 385 Mass. 575, 585 (1982), and were entitled to consider such a factor because of the defendant's flight. *Commonwealth* v. *Carrion*, 407 Mass. 263, 277 (1990).

ing while a significant period of time passed (as the life of the unconscious victim, who had suffered "a good amount of blood loss," ebbed at the accident scene). Ultimately becoming resigned to his predicament — quite possibly upon the realization that his evasive efforts were doomed to failure[9] — the defendant made a call, but not to 911 or to the police emergency number, or to the nearby station house, but rather to directory assistance for the general Pittsfield police department number, bespeaking his ongoing reluctance to identify himself and incur the feared legal consequences.[10]

All this the jury could permissibly and rationally infer based upon the Commonwealth's evidence, which warranted a finding beyond a reasonable doubt that the defendant's flight from the

[9]The victim's friends gave police a description of the hit-and-run vehicle, which was radioed to police headquarters. The defendant admitted on cross-examination that he had a police scanner at his house but denied listening to it after he arrived home. However, his very first words to the police when he finally called — "I'm the person that hit the kid on Crane Avenue" — could be taken to indicate that he knew the police were searching for him.

[10]The defendant's belatedly turning himself in does not negate his violation of subsection 2, which occurred and was complete when he fled with the permissibly inferred intent to avoid identification and law enforcement. Like subsection 1, subsection 2 imposes active and positive duties upon the operator of the vehicle causing a collision or injury — i.e., to stop, remain, and make the required disclosures — either at the scene or immediately thereafter (cf. *Commonwealth* v. *Horsfall*, 213 Mass. at 236; *Commonwealth* v. *Donohue*, 41 Mass. App. Ct. at 94), thereby clearly indicating that the violation occurs when those duties are purposefully ignored at the time they are required to be discharged. Moreover, the operative words, "goes away," underscore the moment of culpability as the physical departure from the scene if accompanied by the requisite intent. See *Commonwealth* v. *Mixer*, 207 Mass. 141, 142 (1910) ("An evil intention and an unlawful action must concur in order to constitute a crime"); *Commonwealth* v. *Valchuis*, 40 Mass. App. Ct. 556, 560, 562 (1996) ("violation of [G. L. c. 90, § 24(2)(*a*)] . . . is not a continuing offense," and the statute of limitations begins to run as of the time of the accident even if the defendant continues to evade law enforcement thereafter). Cf. *Commonwealth* v. *Donohue*, 41 Mass. App. Ct. at 94-95 (defendant's having telephoned the police within thirty minutes and two or three miles after leaving the accident scene was not compliance with subsection 1; "it was for the jury to determine if the time and place of the defendant's report of the accident with the information required by the statute was reasonable"); Perkins & Boyce, Criminal Law 933 (3d ed. 1982) ("If the blow was struck with malice aforethought the resulting death is murder despite the fact that the assailant subsequently changed his mind and was hoping very sincerely . . . that his victim would survive").

accident site, in light of the attendant circumstances, evinced an intent to avoid prosecution or evade apprehension. No legal error infected this conviction or the denials of the defendant's motions for a required finding of not guilty.

*Judgment affirmed.*