COMMONWEALTH *vs.* DANNY SESPEDES. No. 01-P-1697. May 29, 2003. *Search and Seizure,* Affidavit, Probable cause. *Constitutional Law,* Search and seizure. *Probable Cause. Controlled Substances.* Further appellate review granted, 441 Mass. 1105 (2004).

Convicted of trafficking in heroin (100 grams or more) and in cocaine (200 grams or more), the defendant seeks reversal of the judgments, based on (1) the denial of his motion to suppress keys seized from his person during a search of his third-floor apartment, as well as drugs found in the false ceiling of a vacant second-floor apartment to which access was gained by means of the seized keys; and (2) the denial of his motions for required findings of not guilty on both indictments. We discern no errors in the challenged rulings and affirm the judgments of conviction.

*Factual Summary.* In the course of conducting surveillance on the third-floor, right hand apartment at 399 Orange Street, Springfield (where the defendant was known to reside), the police obtained a "no-knock" search

warrant for the targeted apartment, authorizing a search for "crack" cocaine and related paraphernalia as well as a search of any persons found on the premises.[1] While awaiting the arrival of the warrant, the surveillance officers observed the defendant in the second-floor apartment, where he had apparently entered and turned on the lights. The officers saw the defendant looking around outside from the second-floor apartment porch, then return inside for several minutes, after which the lights went off. Shortly thereafter, the officers observed a male ascend to the third-floor apartment, and the door to the apartment was opened by the defendant.

As the officers (wearing clothing and badges prominently identifying them as police) were ascending to the rear third-floor landing to execute the warrant, they saw the defendant looking out the window. Immediately after the defendant made eye contact and looked at the officers, he ran from the window into the interior of the apartment. The police broke down the door with a battering ram and seized the defendant as he ran toward the front of the apartment. A search of the defendant's pockets produced forty dollars and two keys. After an intensive search of the third-floor apartment, including probing into the drop ceilings, moldings, and electrical fixtures, the police found some paraphernalia but no drugs. While the search was progressing, an officer tried the keys taken from the defendant in the several doors of the third-floor apartment, but they did not open any of them. The police then tried the keys in other vacant apartments in the building, discovering that both keys fit the doors to the second-floor apartment where the defendant had been observed earlier.

After securing the front and back doors of the apartment, the police obtained a second search warrant for the second-floor apartment. It was entirely vacant, without furniture, appliances, curtains, or any personal effects. Another intensive search revealed a drop ceiling, behind which the police found several plastic bags containing almost 2,000 grams of both powder and crack cocaine (worth between $60,000 and $80,000), plus two bags containing over 125 grams of 88.2 per cent pure heroin with a retail value of $125,000.

*Discussion.* 1. a. Contrary to the defendant's contention, the affidavit supporting the first search warrant provided sufficient, reliable facts establishing probable cause for the "no-knock" provision. The particularly pertinent facts were the easy destructibility of the drugs (being sold from the apartment in small packages for street distribution); the lookout activity by occupants of the apartment, as observed by police; the occupants' awareness of police presence; and the enterprise's controlled method of operation, requiring the placement of advance orders by customers who were carefully monitored as they approached the building to effect their transactions. See *Commonwealth* v. *Scalise*, 387 Mass. 413, 418, 421-423 (1982); *Commonwealth* v. *Benlien*, 27 Mass. App. Ct. 834, 836-837 (1989); *Commonwealth* v. *Mendez*, 32 Mass. App. Ct. 928, 930 (1992).

b. The motion judge correctly rejected the defendant's argument that the officers made no threshold reappraisal before entering the third-floor apartment pursuant to the "no-knock" warrant. The approaching police were in fact observed by the defendant as they came up to the rear door of the apartment

---

[1]The defendant does not contest the existence of probable cause to issue the search warrant but argues that the magistrate had insufficient information to dispense with the knock and announce requirement. See part 1.a., *infra*.

in clothing clearly identifying them as police. The defendant was "looking at us through the window that looks from the kitchen out to back porches." The defendant then ran from the window to the interior of the apartment. The officers immediately realized that the defendant actually knew of, and was reacting to, their presence. Under such circumstances — far more exigent than the police had anticipated — to have required the police to knock and announce would have been a useless gesture and could have afforded the defendant additional time to escape or dispose of the contraband. See *Commonwealth* v. *Antwine*, 417 Mass. 637, 639-641 (1994).

c. The defendant's assertion that the seizure of the keys improperly exceeded the scope of the first search warrant is unfounded. The search of the defendant's person, which yielded the keys that unlocked the vacant second-floor apartment, was expressly authorized by the terms of the search warrant itself. Discovering the presence of a hard metallic object in the defendant's pants pocket during their frisk of the defendant while executing the warrant, the police were "justified in retrieving that object as a potential weapon." *Commonwealth* v. *Blevines*, 438 Mass. 604, 608 (2003).[2]

"[O]nce [the keys] were [lawfully seized], the police had a reasonable basis to conclude that they were relevant to the issue of control over the premises"; and, "as information began to emerge during the execution of the search warrant that the drugs [which the police had probable cause to believe had been in the third-floor apartment] may have been moved [because none were found in the third-floor apartment despite an intensive search], it was reasonable for the police to conclude that one of the keys [none of which fit the doors in or to the third-floor apartment] might be to [the] nearby [second-floor] apartment [inside of which the defendant had been observed shortly before the police entry] and [was] thus an 'instrumentality of crime' and within the scope of the warrant." *Commonwealth* v. *Alvarez*, 422 Mass. 198, 206 (1996). The seizure of the keys found on the defendant was thus entirely within the rationale of *Alvarez*, as well as permitted by G. L. c. 276, § 1 (the keys being potentially evidence of the crime for which the arrest has been made).[3] See *Commonwealth* v. *Kipp*, 57 Mass. App Ct. 629, 631-632 (2003) (keys found on defendant's person during search incident to his arrest for storing contraband in another person's apartment permitted by G. L. c. 276, § 1, and were not subject to suppression). Furthermore, investigative use of the keys, i.e., using them to open the door to the second-floor apartment, was permitted on the facts of this case. Contrast *Commonwealth* v. *Blevines*, 438 Mass. at 608-610.

[2]The Commonwealth asserts, as an alternative basis for seizure of the keys, that it was incident to the defendant's arrest. The defendant did not contest the search on that basis at the suppression hearing, but instead argued, incorrectly, that the seizure of the keys "went beyond the scope of the search warrant." After announcing that she would "reread Alvarez" (referring to *Commonwealth* v. *Alvarez*, 422 Mass. 198 [1996]), the motion judge denied the defendant's motion to suppress the keys, mentioning additionally that her ruling was "[b]ased on the four corners of the affidavit, of the warrant" and that the defendant "had been placed under arrest."

[3]Additionally, we agree with the Commonwealth that, even if the defendant were entitled to automatic standing to challenge the search of the second-floor apartment under *Commonwealth* v. *Amendola*, 406 Mass. 592, 601 (1990), it would not avail his cause because on this record he failed to establish that he had any reasonable expectation of privacy with respect to the drugs found in the vacant second-floor apartment. See *Commonwealth* v. *Carter*, 39 Mass. App. Ct. 439, 442-443 (1995), *S.C.*, 424 Mass. 409, 410-412 (1997).

2. The Commonwealth's evidence was more than adequate, under the indulgent standards of *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), and its progeny, see *Commonwealth* v. *Henault*, 54 Mass. App. Ct. 8, 12 n.6 (2002), to justify the trial judge's denial of the defendant's motions for required findings of not guilty with respect to the trafficking charges. That evidence easily permitted the jury to conclude, by reasonable inferences, that the defendant (who had been reliably identified as being personally involved in dealing drugs from the third-floor apartment) did not merely have access to the second-floor apartment but also had actually been present in that apartment for a sufficient period of time to indicate his knowledge of the drugs secreted in the apartment ceiling, as well as his ability and intention to exercise control over them. See *Commonwealth* v. *Delarosa*, 50 Mass. App. Ct. 623, 626 (2000). The defendant's reliance upon *Commonwealth* v. *James*, 54 Mass. App. Ct. 726 (2002), *S.C.*, 438 Mass. 1013 (2003), is misplaced. In stark contrast to the instant case, no evidence whatever connected the defendant in *James* to either the attic or to the drugs found therein.

*Judgments affirmed.*

*Brownlow M. Speer*, Committee for Public Counsel Services, for the defendant.

*Thomas H. Townsend*, Assistant District Attorney, for the Commonwealth.