COMMONWEALTH vs. DANNY SESPEDES.

Hampden. May 6, 2004. - June 16, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Practice, Criminal,* Required finding. *Controlled Substances. Evidence,* Consciousness of guilt.

A Superior Court judge erred in denying a defendant's motion for required findings of not guilty at the close of the trial of indictments for trafficking in heroin and cocaine, where all the Commonwealth presented was evidence of a stash of hidden drugs in a vacant apartment in which the defendant was present for a brief time and to which the defendant had access. [99-102]

INDICTMENTS found and returned in the Superior Court Department on November 3, 1999.

Pretrial motions to suppress evidence were heard by *Tina S. Page,* J., and the cases were tried before *Judd J. Carhart,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Brownlow M. Speer,* Committee for Public Counsel Services, for the defendant.

*Thomas H. Townsend,* Assistant District Attorney, for the Commonwealth.

COWIN, J. The defendant, Danny Sespedes, was charged with trafficking in heroin and cocaine. See G. L. c. 94C, § 32E (b) (4), (c) (3). He filed two motions to suppress which were denied. The trial judge denied the defendant's motion for required findings of not guilty at the close of the Commonwealth's case; the defendant was convicted of the two charges; and he appealed from both the denial of his motions to suppress and the convictions. The Appeals Court affirmed the convictions, concluding that there was no error in the denial of suppression and that there was sufficient evidence for the jury to find the defendant guilty beyond a reasonable doubt. *Commonwealth* v.

*Sespedes*, 58 Mass. App. Ct. 907 (2003). In that opinion, the Appeals Court erroneously stated that the defendant "had been reliably identified as being personally involved in dealing drugs from the third-floor apartment." Evidence establishing this fact was contained in search warrant affidavits filed in this case, but no such evidence was introduced at trial. The Appeals Court also misstated other less important facts. *Id.* at 910.

The defendant filed a petition for rehearing identifying the factual inaccuracies in the Appeals Court's opinion. When his petition was denied, he applied for further appellate review. The Commonwealth supported the defendant's application and conceded that the Appeals Court's opinion "contains the errors noted in the defendant's application." We denied the defendant's application without prejudice and remanded the matter to the Appeals Court for reconsideration of the defendant's petition for rehearing in light of the Commonwealth's concession.

Subsequently, in a second order, the Appeals Court again denied the defendant's petition for rehearing, concluding that "the challenged statements, even if inaccurate, were immaterial and inconsequential to the decision and in no way affected the panel's analysis or disposition." We granted the defendant's application for further appellate review, limited to the question whether the evidence was sufficient to warrant the convictions.[1] We conclude that the Commonwealth's evidence was insufficient and reverse the defendant's convictions.

We summarize the evidence at the close of the Commonwealth's case in the light most favorable to the Commonwealth. See *Commonwealth* v. *Brown*, 401 Mass. 745, 745 (1988), citing *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). The building at 399 Orange Street, Springfield, is a three-story, six-apartment dwelling. Each apartment has a rear porch and a back door for entry to the apartment. Wooden stairs lead from ground level up the rear of the building.

At 5 P.M. on September 15, 1999, police officers from the Springfield narcotics bureau began a surveillance of 399 Orange Street. Officer Andrew McQuade was assigned to surveillance

---

[1] The defendant also sought further appellate review of the denial of his motions to suppress. We do not address those issues.

of the rear of the building. Shortly after he arrived, McQuade observed a male with "just [] a towel on, like he had just come out of the shower," whom he identified at trial as the defendant, come onto the porch from the third-floor apartment, look around, and reenter the apartment. After approximately forty minutes, McQuade saw the lights go on in a second-floor apartment. Two to three minutes later, he observed the defendant, now clothed, emerge from the second-floor apartment onto the porch. The defendant looked over the porch "for a minute or so" and went back into the second-floor apartment. Officer Felix Aguirre, who was conducting the surveillance of the front of 399 Orange Street, also observed the light in the second-floor apartment come on, and, after a brief period, turn off again. Ten minutes after the defendant was seen leaving the second-floor porch, McQuade saw him again at the "third floor rear" letting in someone who was later seen leaving the defendant's apartment. Finally, McQuade observed the defendant at the rear door of the third-floor apartment "let[ting] in" a female who had climbed up the back stairs. Twenty or thirty minutes later, additional officers arrived at the house with a search warrant for the third-floor apartment. The entire surveillance lasted approximately two hours.

Officers wearing bullet proof vests marked "police" approached the third-floor apartment from the back door. One of the officers was armed with a battering ram. As the police approached, an officer saw the defendant look briefly through the window from the kitchen onto the back porch and then disappear. The police hit the door with the battering ram. As the police entered, they saw the defendant run from the kitchen toward the front of the apartment.[2] The defendant was taken into custody. According to one officer who was fluent in Spanish and spoke with the defendant in Spanish, when the defendant was asked to identify himself, "[a]t one point during the conversation the name Argamante came out, and then we found out later that his name was Danny Sespedes. Then he told us his name is Danny Sespedes." In a search of the defendant, the police found in his pockets forty dollars and two keys. Although the keys in the defendant's possession fit the locks of both

---

[2]There was a woman in the apartment at this time.

doors to the third-floor apartment, they did not "operate . . . or open" those locks. The keys did open the locks on the front door of the second-floor apartment.[3] A thorough search of the third-floor apartment yielded only various personal papers of the defendant, two cellular telephones, and a sifter found on the kitchen floor.[4] No drugs were located in that apartment.

Once it was learned that the keys from the defendant's pocket fit the second-floor apartment, that apartment was secured and a search warrant obtained for it. The apartment was vacant and appeared to be under renovation. The electricity was on,[5] and there were paint cans and roller pans in the apartment, but no furniture, refrigerator, clothing, or personal effects. In a search of the second-floor apartment, the police found a large amount of powder and crack cocaine, raw heroin, two digital scales, and $364 in cash, all in a dropped ceiling directly above a radiator. Access to the ceiling apparently was by the radiator below it. Eighty dollars of the money in the ceiling was determined to be the property of the Springfield police department.[6] There was testimony that contraband is commonly hidden in dropped ceilings. Certificates of analysis revealed that over 1.9 kilograms of cocaine and 125 grams of heroin were found in the ceiling of the second-floor apartment. Calculations based on expert testimony indicate the value of the cocaine as between $63,900 and $78,900, and of the heroin as approximately $125,000.

The day after the search, the police, with the permission of the building superintendent, retrieved the front door knob from the second-floor apartment. There were pry marks by the door knob, and it appeared to have been forced open with "some type of sharp object." Although the superintendent's key fit into the deadbolt lock only (the door had a doorknob lock as well as

[3]The keys fit into, but did not operate, the locks to the rear door of the second-floor apartment.

[4]There was no evidence of drug residue on the sifter, and there was no expert testimony regarding the use of sifters in the drug trade.

[5]No evidence was introduced regarding the identity of the person who rented the second-floor apartment or who paid for the electricity in that apartment.

[6]There was no evidence explaining how the eighty dollars belonging to the Springfield police department came to be hidden in the ceiling of the second-floor apartment.

a deadbolt lock), the keys discovered on the defendant opened both locks.

An officer testified that about one week prior to the search he had visited 399 Orange Street in an attempt to purchase drugs. He knocked on the door of the third-floor right-side apartment, but there was no response. As he descended the stairs to leave, he noticed that both apartments on the second-floor were empty and appeared to be unoccupied.

The defendant claims that his motion for required findings of not guilty should have been allowed. He contends that, although there was evidence that he was present and had access to the second-floor apartment, the Commonwealth failed to introduce sufficient evidence that the defendant possessed the hidden drugs. "In reviewing the denial of a motion for a required finding of not guilty, we view the evidence in the light most favorable to the Commonwealth in order to determine whether the evidence was sufficient to satisfy a rational trier of fact of each element of the offense beyond a reasonable doubt." *Commonwealth* v. *Brown*, 401 Mass. 745, 747 (1988). See *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). We conclude that there was insufficient evidence at the close of the Commonwealth's case to satisfy any rational trier of fact beyond a reasonable doubt that the defendant possessed the drugs hidden in the second-floor apartment.

Because the defendant was not in actual possession of the drugs, the Commonwealth's case rested on a theory of constructive possession of the drugs by the defendant. Constructive possession implies "knowledge coupled with the ability and intention to exercise dominion and control." *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 409 (1989), quoting *Commonwealth* v. *Rosa*, 17 Mass. App. Ct. 495, 498 (1984). "The Commonwealth may prove that the defendant had knowledge of the contraband by circumstantial evidence, if the evidence warrants a reasonable inference to that effect." *Commonwealth* v. *Garcia*, 409 Mass. 675, 686 (1991). "[P]resence, supplemented by other incriminating evidence, 'will serve to tip the scale in favor of sufficiency.' " *Commonwealth* v. *Albano*, 373 Mass. 132, 134 (1977), quoting *United States* v. *Birmley*, 529 F.2d 103, 108 (6th Cir. 1976).

The Commonwealth failed to introduce sufficient evidence that the defendant knew of the drugs hidden in the dropped ceiling of the second-floor apartment. The only evidence connecting the defendant to the second-floor apartment, the keys discovered in his pocket and eyewitness testimony of an officer seeing him leave that apartment and stepping onto the back porch, is evidence that the defendant had access to, and at most, was present briefly in the apartment where cocaine and heroin were hidden. The defendant's access to and presence in that apartment is insufficient to demonstrate the requisite knowledge. See *Commonwealth* v. *Cruz*, 34 Mass. App. Ct. 619, 621-623 (1993); *Commonwealth* v. *Caraballo*, 33 Mass. App. Ct. 616, 619 (1992).

Noticeably absent in this case are any other indicia, circumstantial or direct, other than consciousness of guilt, see *infra* at 102, that the defendant knew of the drugs in the second-floor apartment. None of the defendant's belongings was discovered there; in fact, evidence indicated that the apartment was vacant, in the process of being renovated, and that someone had attempted to pry open the lock. Nor were the drugs discovered in plain view, so that knowledge may be inferred. Contrast *Commonwealth* v. *Daley*, 423 Mass. 747, 752 (1996) (drugs plainly visible on floor in front of vehicle driver's seat). Despite thorough searching, the officers found nothing in the third-floor apartment connecting the defendant to the drugs hidden in the second-floor apartment, or to the drug business in general. There was no evidence that the defendant was in possession of any of the accouterments of the drug trade.[7] Cf. *Commonwealth* v. *Gollman*, 436 Mass. 111, 115-116 (2002); *Commonwealth* v. *Clermy*, 421 Mass. 325, 331 (1995). No large amounts of cash or agents for "cutting" cocaine were found on him or in the third-floor apartment. Cf. *Commonwealth* v. *La-Perle*, 19 Mass. App. Ct. 424, 425 (1985); *Commonwealth* v. *Miller*, 17 Mass. App. Ct. 991 (1984). The defendant did not

---

[7]The sifter was not shown to have been used in the drug business, see note 4, *supra*, and, without expert testimony, two cellular telephones are hardly evidence of criminal activity. Expert testimony might have been, but was not, offered that these items are often used in the drug trade. See *Commonwealth* v. *Miranda*, 441 Mass. 783, 787 (2004) (cellular telephones); *Commonwealth* v. *Frias*, 47 Mass. App. Ct. 293, 295 (1999) (sifter).

seek to divest himself of the keys to the second-floor apartment and did not react when the police removed the keys to that apartment from his pocket. Cf. *Alicea* v. *Commonwealth*, 410 Mass. 384, 386-388 (1991) (as trooper came close to drugs in vehicle's secret compartment, defendant became "obvious[ly] agitat[ed]," supporting inference of knowledge that something incriminating was there).

The ability to exercise control over the premises and the defendant's brief presence in them is insufficient, at least in this case, to imply constructive possession of the hidden contraband. See *Commonwealth* v. *Araujo*, 38 Mass. App. Ct. 960, 961-962 (1995) (evidence insufficient that defendant possessed shotgun in closet of room where he was sleeping and in which a dresser contained his wallet); *Commonwealth* v. *Cruz*, *supra* at 621-623 (although defendant admitted living in apartment, no evidence "tied" defendant to bedroom where drugs found and compelling evidence linked another man to that bedroom; fact that defendant ran from window when police approached and was running from living room to kitchen proved neither flight nor effort to protect contraband); *Commonwealth* v. *Caraballo*, *supra* at 619 (no constructive possession where defendant seen standing in common hallway outside open door to his apartment next to chair above which drugs secreted in ceiling); *Commonwealth* v. *Rivera*, 31 Mass. App. Ct. 554, 558 (1991) (nothing connecting defendant who occupied one bedroom of apartment to other bedroom in which drugs hidden and which was occupied by another person who admitted ownership of the drugs); *Commonwealth* v. *Booker*, 31 Mass. App. Ct. 435, 438 (1991) (insufficient evidence of possession where drugs found in living room of apartment that defendant shared with at least one other person). Cf. *Commonwealth* v. *Yazbeck*, 31 Mass. App. Ct. 769, 775 (1992) (sufficient evidence defendant in constructive possession of marijuana found in locked basement closet on following facts: in addition to defendant's frequent presence in house, he engaged in controlled sale of drugs in house, admitted to possessing other drugs, his possessions located throughout house including a suitcase containing cocaine, basement easily accessible from first-floor area with which defendant "familiar," and marijuana in basement closet

"gave forth a noticeable odor"); *Commonwealth* v. *Rarick*, 23 Mass. App. Ct. 912, 913 (1986) (sufficient evidence defendant possessed drugs in bedroom where her personal effects found in proximity to drugs, despite evidence she shared house with one or more individuals).[8]

The Commonwealth relies on evidence of consciousness of guilt to meet its burden. It cites two different actions by the defendant: that he quickly attempted to leave the kitchen when the officers entered the apartment from the back door, and that, according to the Commonwealth's characterization of the testimony, he responded "Argamante" when initially asked his name. Assuming that either of these actions by the defendant is probative of his consciousness of guilt, such evidence does not render the quantum of evidence sufficient to prove knowledge of the drugs in the second-floor apartment. See *Commonwealth* v. *Amparo*, 43 Mass. App. Ct. 922, 924 (1997) (defendant's flight on arrival of police and possession of pager insufficient where no evidence, other than his presence, connected him to apartment where drugs found in vacuum cleaner).

All the Commonwealth presented in this case was the stash of hidden drugs in a vacant apartment in which the defendant was present for a brief time and to which the defendant had access (and evidence that arguably might be considered as consciousness of guilt). To permit the defendant to be convicted on such evidence comes perilously close to endorsing guilt by presence at the scene of contraband, a concept we have disavowed. *Commonwealth* v. *Boria*, 440 Mass. 416, 418-419, 421 (2004). The defendant's motion for required findings was erroneously denied.

*Judgments reversed.*

---

[8]The Commonwealth argues that, because the apartment was vacant, the defendant had no reason to be present in the second-floor apartment other than to access the hidden drugs. The cases relied on by the Commonwealth regarding sparsely furnished apartments are distinguishable. They involve fortified apartments or additional evidence connecting the defendants to the hidden drugs. See *Commonwealth* v. *Antonio*, 45 Mass. App. Ct. 937, 938 (1998); *Commonwealth* v. *Watson*, 36 Mass. App. Ct. 252, 259 (1993); *Commonwealth* v. *Arias*, 29 Mass. App. Ct. 613 (1990), *S.C.*, 410 Mass. 1005 (1991).